YOUNG v YOUNG

Docket No. 165880. Submitted February 15, 1995, at Lansing. Decided
June 9, 1995, at 9:05 A.M.

Kathleen A. Young brought an action in the Oakland Circuit
Court against Michael S. Young, her former husband, seeking
damages under the federal wiretapping act, the Michigan
eavesdropping statute, and the common-law tort of invasion of
privacy on the basis of the defendant's secret recording of her
conversations made from a telephone in their home during
their marriage. The trial court, Robert L. Templin, J., granted
summary disposition for the defendant with respect to the
federal wiretapping claim, finding that the claim was barred by
interspousal immunity, but denied summary disposition for
either party with respect to the other two claims. Thereafter,
the other two claims were dismissed by stipulation. The plain-
tiff appealed.

The Court of Appeals *held:*

1. Although there is a split of authority among the circuits of
the federal court of appeals with respect to whether an action
may be brought pursuant to the federal wiretapping act, 18
USC 2510 *et seq.*, where interspousal wiretapping is alleged,
the majority view is that interspousal wiretapping is included
within the scope of the act's prohibitions and remedies. The
legislative history of the act clearly evidences an intent by
Congress to prohibit eavesdropping in domestic relations cases,
an intent that would be thwarted by a judicially created
interspousal-immunity exception. Accordingly, the trial court
erred in granting the defendant summary disposition of the
federal wiretapping claim.

2. Since the 1986 amendment of 18 USC 2511, the good-faith
belief that one's conduct was lawful has not been a defense to
an action brought under the federal wiretapping act. The 1986
amendment of § 2511 was meant to underscore that liability is
not dependent on the merits of a defendant's motive in violat-
ing the law. All that is required is that a defendant intended

REFERENCES

Am Jur 2d, Searches and Seizures §§ 324, 327, 333, 336.
See ALR Index under Eavesdropping and Wiretapping.

that the act be accomplished on purpose. Accordingly, because the defendant admitted that he intentionally wiretapped the plaintiff's telephone conversations without her consent or knowledge, any mistake of law or ignorance of the law is not a defense to the federal wiretapping claim, and the trial court erred in denying summary disposition for the plaintiff.

Reversed and remanded.

1. ACTIONS — FEDERAL WIRETAPPING ACT — CIVIL REMEDIES — STATE COURT JURISDICTION.

State courts have concurrent jurisdiction with federal courts to adjudicate civil claims arising out of violation of the federal wiretapping act (18 USC 2510 *et seq.*).

2. ACTIONS — FEDERAL WIRETAPPING ACT — CIVIL REMEDIES — INTERSPOUSAL IMMUNITY.

Interspousal wiretapping is included within the scope of the prohibitions and remedies of the federal wiretapping act; a judicially created interspousal-immunity exception would thwart the clear intent of Congress to prohibit eavesdropping in domestic relations cases (18 USC 2510 *et seq.*).

3. ACTIONS — FEDERAL WIRETAPPING ACT — CIVIL REMEDIES — DEFENSES.

The good-faith belief that it is lawful to eavesdrop on conservations made by others on one's own telephone is not a defense to a civil action brought pursuant to the federal wiretapping act (18 USC 2510 *et seq.*).

*Lyon, Colbert & Sadowski* (by *Elizabeth A. Sadowski*), for the plaintiff.

*Law Offices of Thomas J. Trenta, P.C.* (by *Thomas J. Trenta* and *Richard A. Joslin, Jr.*), for the defendant.

Before: MICHAEL J. KELLY, P.J., and McDONALD and GRIFFIN, JJ.

GRIFFIN, J. Plaintiff appeals as of right an order of the circuit court dismissing her federal wiretapping action, 18 USC 2510 *et seq.*, on the basis that the act does not apply to interspousal wiretapping within the marital home. We reverse and remand

for entry of a judgment in plaintiff's favor. We hold that there is no interspousal-immunity exception under the federal wiretapping act. In addition, we hold that a mistake of law or ignorance of the law is not a defense.

I

On October 15, 1990, plaintiff instituted divorce proceedings between the parties. During a period of reconciliation from January through April 1991, the parties lived together in the marital home. During this period, defendant began tape recording all incoming calls, because he suspected plaintiff of having an affair. The tape recorder was secretly hidden underneath a bed. Defendant kept a written log of some of plaintiff's calls. Although defendant alleges that he had no knowledge that tape recording under those circumstances violated state or federal law, he has admitted that the recordings were made intentionally.

Following plaintiff's discovery of the hidden tape recorder, the parties were divorced. Thereafter, plaintiff filed suit against defendant, alleging that her conversations were recorded without her consent or knowledge. In her complaint, plaintiff alleged violations of the federal wiretapping act,[1] the

---

[1] Although not addressed by the lower court or either party, we recognize that the issue whether state courts have concurrent jurisdiction over civil actions brought under the federal wiretapping act is a question of first impression. We first note that there is a strong presumption in favor of concurrent state court jurisdiction. *Gulf Offshore Co v Courtney,* 453 US 473, 477-478; 101 S Ct 2870; 69 L Ed 2d 784 (1981); *Claflin v Houseman,* 93 US 130, 136-137; 23 L Ed 833 (1876). Nevertheless, this presumption may be rebutted by "an explicit statutory directive, by unmistakeable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Tafflin v Levitt,* 493 US 455, 459; 110 S Ct 792; 107 L Ed 2d 887 (1990), quoting *Gulf Offshore Co, supra* at 478. Because we find nothing that suggests that Congress confined jurisdiction solely to the federal courts, we conclude that state courts have the authority to adjudicate such claims.

Michigan eavesdropping statute, MCL 750.539 *et seq.*; MSA 28.807 *et seq.*, and the common-law tort of invasion of privacy.

On May 20, 1993, a hearing was held concerning plaintiff's motion for summary disposition brought pursuant to MCR 2.116(C)(9) and (10). At the hearing, the circuit court dismissed plaintiff's claims under the federal wiretapping act, after ruling that interspousal wiretapping within the marital home is an exception to the act. Thereafter, plaintiff's remaining claims also were dismissed. On appeal, plaintiff challenges only the dismissal of her federal wiretapping claims.

II

THE STATUTORY SCHEME

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 USC 2510-2521, commonly known as the federal wiretapping act, provides for both criminal and civil remedies for unauthorized, unconsensual wiretapping. Section 2511 provides for a fine or imprisonment for the intentional interception of any "wire, oral or electronic communication" or the intentional use or disclosure of the contents of a communication that was intercepted illegally. 18 USC 2511(1)(a), (c), and (d).

In addition, § 2520 provides for a broad range of civil remedies for the interception, disclosure, or intentional use of a communication in violation of title III. 18 USC 2520(a). These remedies include equitable or declaratory relief, actual or statutory damages, including the recovery of punitive damages in appropriate cases, and costs and reasonable attorney fees. 18 USC 2520(b).

### III

#### INTERSPOUSAL WIRETAPPING

The question whether there is interspousal immunity for civil actions brought under the federal wiretapping act is an issue of first impression in Michigan. Where there is no conflict, state courts are bound by the holdings of federal courts on federal questions. *Schueler v Weintrob,* 360 Mich 621; 105 NW2d 42 (1960); *Kocsis v Pierce,* 192 Mich App 92, 98; 480 NW2d 598 (1991). However, because this issue has divided the circuits of the federal court of appeals, we are free to choose the most appropriate view. *Schueler, supra* at 634; *Bruno v Dep't of Treasury,* 157 Mich App 122, 130; 403 NW2d 519 (1987).

Although there is a split among the circuits of the federal court of appeals, the majority view is that such wiretapping is actionable under title III. See, e.g., *Heggy v Heggy,* 944 F2d 1537, 1539 (CA 10, 1991), cert den 503 US 951 (1992); *Kempf v Kempf,* 868 F2d 970, 973 (CA 8, 1989); *Pritchard v Pritchard,* 732 F2d 372, 374 (CA 4, 1984); *United States v Jones,* 542 F2d 661, 673 (CA 6, 1976). Only two federal circuits are in accord with the lower court's ruling that there is no civil remedy for interspousal wiretapping under title III. See *Anonymous v Anonymous,* 558 F2d 677, 679 (CA 2, 1977); *Simpson v Simpson,* 490 F2d 803, 810 (CA 5, 1974), cert den 419 US 897 (1974).

Defendant, relying on *Simpson,* argues that this Court should adopt the minority view, which would bar plaintiff's title III action. In *Simpson,* the Fifth Circuit Court of Appeals refused to extend title III to include interspousal wiretapping despite acknowledging that such wiretapping came within the reach of the statutory language:

The naked language of Title III, by virtue of its inclusiveness, reaches this case. However, we are of the opinion that Congress did not intend such a far-reaching result, one extending into areas normally left to the states, those of the marital home and domestic conflicts. We reach this decision because Congress has not, in the statute, committee reports, legislative hearings, or reported debates indicated either its positive intent to reach so far or an awareness that it might be doing so. Given the novelty of a federal remedy for persons aggrieved by the personal acts of their spouses within the marital home, and given the severity of the remedy seemingly provided by Title III, we seek such indications of congressional intent and awareness before extending Title III to this case. [*Id.* at 805-806.]

In contrast, the majority view most recently was adopted by the Tenth Circuit Court of Appeals in *Heggy, supra.* There, the Tenth Circuit rejected the *Simpson* Court's statutory construction and legislative analysis:

The *Simpson* Court's approach to statutory construction has been criticized by courts and commentators. See, e.g., *Kempf v Kempf,* 868 F2d 970, 972-973 (CA 8, 1989); *Kratz v Kratz,* 477 F Supp 463, 468-469 (ED Pa, 1979); Comment, *Wiretapping and the Modern Marriage: Does Title III Provide a Federal Remedy for Victims of Interspousal Electronic Surveillance?,* 91 Dick L Rev 855, 872, 876 (1987) (hereinafter "*Wiretapping and Modern Marriage*").

We reject not only the *Simpson* Court's method of statutory analysis but also its interpretation of the legislative history. Instead, we agree with the district court that the legislative history of Title III evinces a congressional awareness of the widespread use of electronic eavesdropping in domestic relations cases and an intent to prohibit such eavesdropping. See Remarks of Sen. Long, Hear-

ings on Invasions of Privacy Before the Subcomm. on Admin. Practice and Procedure of the Sen. Comm. on the Judiciary, 89th Cong 1st Sess, part 5 at 2261 (1965-66) ("The three large areas of snooping in this [non-governmental] field are (1) industrial (2) divorce cases, and (3) politics. So far, we have heard no real justification for continuance of snooping in these areas.").

\* \* \*

Moreover, and in light of the split of judicial authority, had it been the intent of Congress to keep interspousal wiretapping beyond the reach of Title III, Congress could have expressly excluded such wiretapping when it overhauled Title III in the Electronic Communications Privacy Act of 1986, PL No 99-508, 100 Stat 1848. Although the Privacy Act amendments touched nearly every section of Title III, Congress did not codify the judicially created exception for interspousal wiretapping found in *Simpson*. [944 F2d 1540-1541.]

We find the majority rule to be the more persuasive position. On its face, the statute encompasses interspousal wiretapping. In our view, the *Simpson* Court ignored the plain and unambiguous language of the act in its creation of an interspousal-immunity exception. Further, the legislative history of the statute clearly evidences an intent by Congress to prohibit eavesdropping in domestic relations cases. A judicially created interspousal-immunity exception would thwart one of the objectives of the statute. For these reasons, we follow *Heggy* and hold that interspousal wiretapping is actionable under title III. The trial court erred in dismissing plaintiff's title III claims.

IV

DEFENSES

Having determined that plaintiff's title III action

is not barred as a matter of law, we next turn to plaintiff's argument that the trial court erred in denying her motion for summary disposition. Plaintiff claims that defendant's stated "good-faith" belief that his actions were lawful does not constitute a viable defense to a title III action. Rather, plaintiff contends that a mistake of law or ignorance of the law defense does not exist under title III. We agree.

Section 2520 provides for various civil remedies for a violation of § 2511. Section 2511 makes it a crime to intentionally intercept any "wire, oral or electronic communication." 18 USC 2511(1)(a). Before its amendment in 1986, the standard under § 2511 was "willfully" rather than "intentionally." The parties dispute the mens rea requirement of the term "intentionally" in light of the 1986 amendment.

The pre-1986 standard under § 2511 was construed by the Second, Fourth, and Sixth Circuits of the United States Court of Appeals as making the specific intent to violate the law an element of the offense. In *Citron v Citron,* 722 F2d 14, 16 (CA 2, 1983), cert den 466 US 973 (1984), the Second Circuit Court of Appeals held that the term "willfully" under § 2511 should be construed as it has been interpreted under the federal criminal tax statutes:

> Courts do recognize, of course, that the word willfully may be afforded a different meaning if required by a particular statutory scheme in which it appears. *See, e.g., United States v Dixon,* 536 F2d 1388, 1397 (CA 2, 1976) (lesser showing may be required for purposes of § 32(a) of the Securities Exchange Act). But no special context is presented by the wiretapping statute. The citation to [*United States v] Murdoch* [290 US 389; 54 S Ct 223; 78 L Ed 381 (1933)] in the Senate Report

accompanying Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (the wiretapping statutes), makes it clear that Congress employed the term "willfully" to denote at least a voluntary, intentional violation of, and perhaps also a reckless disregard of, a known legal duty, see S Rep No 1097, 90th Cong, 2d Sess, *reprinted in* 1968 US Code Cong & Ad News 2112, 2181 . . . .

Further, the author of the model wiretapping statute, upon which Title III was based, also cited *United States v Murdoch* for the definition of "willfully," and observed that "this [definition] seems only just in light of the technical character of the act." See Blakey & Hancock, *A Proposed Electronic Surveillance Control Act,* 43 Notre Dame Law 657, 666 n 19 (1968). Nothing in the statute or in its legislative history suggests that congress intended different standards of willfulness to be applied in the civil and criminal contexts. Nor does it seem logical that the same term, "willfully," in the same statute, § 2511, should have any different meaning when applied directly to a criminal violation than when the same violation is incorporated by reference to establish civil liability.

In arguing for the continued applicability of the pre-1986 standard in *Citron,* defendant points to the following legislative history behind the 1986 amendment:

In order to underscore that the inadvertent reception of a protected communication is not a crime, the subcommittee changed the state of mind requirement under title III of the Omnibus Crime Control and Safe Streets Act of 1968 from "willful" to "intentional." This change in the law addresses the concerns of radio scanners that in the course of scanning radio frequencies in order to receive public communications, one could inadvertently tune through a protected communication like a cellular telephone call. This provision makes

clear that the inadvertent interception of a protected communication is not unlawful under this Act. [1986 US Code Cong & Admin News 3560.]

Defendant argues that this legislative history indicates that the 1986 amendment was not meant to change substantively the mens rea requirement under § 2511. Rather, defendant contends that the amendment was a mere attempt on behalf of Congress to clarify the existing standard.

The Electronic Communications Privacy Act of 1986 extensively modified § 2511 of title III, including changing the mens rea requirement from "willfully" to "intentionally." We agree with defendant that before 1986 a "good-faith" belief that one's conduct was lawful was a viable defense to a title III action. Nevertheless, our review of the legislative history behind the Privacy Act refutes defendant's assertion that the 1986 amendment did not change substantively the required mens rea under § 2511. See *Sanders v Robert Bosch Corp*, 38 F3d 736, 742-743 (CA 4, 1994); *Shubert v Metrophone, Inc*, 898 F2d 401, 405 (CA 3, 1990).

The legislative history behind the amendment indicates that the term "intentionally" as used under § 2511 was not meant to require the existence of a motive:

> As used in the Electronic Communications Privacy Act, the term "intentional" is narrower than the dictionary definition of "intentional." "Intentional" means more than that one voluntarily engaged in conduct or caused a result. Such conduct or the causing of the result must have been the person's conscious objective. An "intentional" state of mind means that one's state of mind is intentional as to one's conduct or the result of one's conduct if such conduct or result is one's conscious objective. The intentional state of mind is applicable only to conduct and results. Since one

has no control over the existence of circumstances, one cannot "intend" them.

As indicated in the Judiciary Committee's report to accompany the Criminal Code Reform Act of 1981 (S 1630):

"The highest degree of culpability is present if a person engages in conduct (or causes a result) *intentionally,* that is, 'if it is his conscious objective or desire to engage in the conduct (or cause the result).' A common means to describe conduct as intentional, or to say that one causes the result intentionally, is to state that it is done or accomplished 'on purpose.' "

"The term 'intentional' is not meant to connote the existence of a motive. Liability for intentionally engaging in prohibited conduct is not dependent on an assessment of the merit of the motive that led the person to disregard the law. (Emphasis in original; citation omitted.) Report of the Committee on the Judiciary, United States Senate, to accompany S 1630, Criminal Code Reform Act of 1981, Report 97-307 at 67."

The Committee went on to point out that people who steal because they like to or to get more money or to feed the poor, like Robin Hood, all commit the same crime. *Id.* The word "intentional" describes the mental attitude associated with an act that is being done on purpose. It does not suggest that the act was committed for a particular evil purpose. [1986 US Code Cong & Admin News 3577-3578.]

Contrary to defendant's assertion, this legislative history makes clear that a mistake of law or ignorance of the law is no longer a defense under title III. Rather, the amendment of § 2511 was meant to underscore that liability is not dependent on the merits of a defendant's motive in violating the law. All that is required is that a defendant intended that the act be accomplished "on purpose." Given defendant's admission that he "inten-

tionally" wiretapped plaintiff's phone conversations without her consent or knowledge, we conclude that the trial court erred in denying plaintiff's motion for summary disposition.

Reversed and remanded for entry of judgment for plaintiff and for further proceedings consistent with this opinion.[2] We do not retain jurisdiction.

[2] We decline to address plaintiff's remaining argument regarding her damages under title III because this issue was not decided by the lower court. It is well-settled that as a general rule, appellate review is limited to issues decided by the trial court. *Schubiner v New England Ins Co*, 207 Mich App 330, 331; 523 NW2d 635 (1994); *Alyas v Gillard*, 180 Mich App 154, 159; 446 NW2d 610 (1989).