Hillsborough-northern judicial district
No. 94-438

## CAROL FISCHER (FORMERLY HOOPER)

v.

## DAVID HOOPER

June 16, 1999

*Douglas & Douglas*, of Concord (*C. Kevin Leonard* and *Susanna G. Robinson* on the brief, and *Mr. Leonard* orally), for the plaintiff.

*Dorothy F. Silver*, of Manchester, by brief and orally, for the defendant.

HORTON, J. This appeal arises in the context of a jury verdict finding the defendant, David Hooper, liable for both a violation of the New Hampshire wiretapping and eavesdropping statute, RSA ch. 570-A (1986 & Supp. 1991) (amended 1995, 1996, 1998), and the common law tort of invasion of privacy. The defendant asserts that the Superior Court (*Groff*, J.) made the following errors: (1) denying the defendant's request for a jury instruction and motion for a directed verdict based on the plaintiff's lack of reasonable expectation of privacy; (2) denying the defendant's motion for a directed verdict based on insufficient evidence for the jury to find emotional distress; (3) instructing the jury that the willful conduct required for a violation of RSA chapter 570-A is synonymous with the *mens rea* of "knowingly" in RSA 626:2, II(b) (1996) rather than the definition of willfulness formerly required under the Federal Wiretapping Statute, 18 U.S.C. § 2511(1) (1982) (amended 1986, 1994, 1996); (4) denying the defendant's motion to assert a blanket privilege of his Fifth Amendment right against self-incrimination and requiring him to invoke the privilege before the jury; and (5) declining to include the term "acquiescence" in the jury instruction on implied consent. The plaintiff, Carol Fischer, filed a cross-appeal asserting the following errors made by the trial court: (1) failing to adequately consider the factors for granting attorney's fees when the trial court awarded less than the amount requested by the plaintiff; and (2) granting the defendant's motion for remittitur and reducing the jury's verdict from $25,000 to $15,000 based on double recovery. We reverse and remand for a new trial.

*I. Facts*

The plaintiff and defendant were divorced in 1991. They were granted joint custody of their daughter, who spent the school year with the defendant and vacations with the plaintiff. In addition, a guardian ad litem and a therapist were appointed for her. After consulting the therapist, the guardian ad litem wrote a letter to both parties seeking to clarify the basis of friction that had arisen regarding their daughter's visitation. The guardian ad litem recom-

mended that telephone calls between each of the parties and their daughter, as well as between the parties themselves, be recorded solely for the purpose of assisting the therapist in resolving the communication problems that had arisen between the parties. She cautioned that the parties would have to agree to the recording. Although the defendant never obtained the plaintiff's permission to record the telephone conversations, he nonetheless did so without her knowledge. During a meeting with the plaintiff, the guardian ad litem, and the therapist, the defendant revealed that he had been taping the plaintiff's telephone conversations.

The plaintiff took a copy of a tape to the New Hampshire Attorney General's office. The attorney general's investigation revealed that the defendant had made four or five tapes. The defendant, however, was not arrested for violating RSA 570-A:2 (1986 & Supp. 1991) (amended 1992, 1995, 1996).

The plaintiff sued the defendant, seeking damages for, *inter alia*, violations of the State wiretapping and eavesdropping statute, RSA ch. 570-A, and the common law tort of invasion of privacy. The jury awarded the plaintiff damages of $10,000 for a violation of RSA chapter 570-A and $15,000 for a violation of her right of privacy. Pursuant to RSA 570-A:11 (1986) (amended 1995), the plaintiff sought $37,371 in attorney's fees and $1,287.27 in costs. The court awarded $5,000 in attorney's fees and $176.71 in costs. The defendant moved for judgment notwithstanding the verdict, and to set aside the jury verdict and for remittitur. The trial court reduced the verdict from $25,000 to $15,000, reasoning that the jury had awarded double recovery on the emotional distress damage element which was common to both RSA chapter 570-A and the tort of invasion of privacy. Both parties have appealed.

## II. Mens Rea

We begin with the defendant's third ground for appeal: that the trial court erred in instructing the jury that a violation of RSA 570-A:2, I, required the *mens rea* of "knowingly." *See* RSA 626:2, II(b). The defendant contends that we should look to the pre-1986 federal wiretapping statute, 18 U.S.C. § 2511(1), the language of which closely tracks that of RSA 570-A:2, I(a). The federal statute required willful conduct, which had been interpreted to require a showing that the defendant knew he was violating the law. *See Citron v. Citron*, 722 F.2d 14, 16 (2d Cir. 1983), *cert. denied*, 466 U.S. 973 (1984); *see also Young v. Young*, 536 N.W.2d 254, 257-58 (Mich. Ct. App. 1995).

When faced with a question of statutory interpretation, we look first to the language of the statutory provisions at issue. *See Appeal of Town of Newmarket*, 140 N.H. 279, 282, 665 A.2d 1088, 1091 (1995). RSA 570-A:11 allows recovery of damages in a civil action for a violation of RSA chapter 570-A. In this case, the plaintiff proceeded under a theory that the defendant had violated RSA 570-A:2, I, which provides that a person is guilty of a class B felony if he wilfully intercepts a wire communication without the consent of all of the parties. The term "wilfully" is not defined in RSA chapter 570-A. RSA 626:2 (1996), however, defines the culpable mental states for violations of criminal statutes. RSA 626:2, IV states: "A requirement that an offense be committed wilfully is satisfied if the person acts knowingly with respect to the material elements of the offense, unless a purpose to impose further requirements appears." The trial court rejected the defendant's argument that "wilfully" in RSA 570-A:2, I, requires a showing of bad faith or ill will, and instructed the jury based on the mental state of "knowingly" as defined in RSA 626:2, II(b).

The defendant argues that although ordinarily "wilfully" should be the same as "knowingly," the structure and legislative background of RSA 570-A:2 demonstrate "a purpose to impose further requirements." We agree.

Prior to 1988, the "wilful" interception of wire communications without the consent of all parties was a class B felony. *See* Laws 1977, 588:16 (codified as RSA 570-A:2, I (1986)). In 1988, RSA 570-A:2 was amended to also prohibit as a misdemeanor the "knowing" interception of a wire communication with the consent of one, but not all, of the parties. *See* Laws 1988, 25:3 (codified as RSA 570-A:2, I-a (Supp. 1991)). The legislature, therefore, has used two different words to describe the *mens rea* for felony and misdemeanor conduct. If the legislature intended the same *mens rea* to be applied in both paragraphs I and I-a, we cannot explain why it used different words to describe the same mental state. "All statutes upon the same subject-matter are to be considered in interpreting any one of them." *State v. Farrow*, 140 N.H. 473, 475, 667 A.2d 1029, 1031 (1995) (quotation and brackets omitted). Accordingly, we hold that the legislature did not intend to impose a *mens rea* of "knowingly" in RSA 570-A:2, I. We must therefore determine what mental state the legislature intended to impose for a violation of RSA 570-A:2, I.

"RSA chapter 570-A resembles Title III, the federal law forbidding the interception and disclosure of wire communications, and we look to federal cases interpreting that statute to assist us in

construing the New Hampshire statute." *State v. Telles*, 139 N.H. 344, 346, 653 A.2d 554, 556 (1995) (citation omitted). While the defendant contends that "wilfully" in the pre-1986 federal wiretapping statute requires that the defendant act with bad faith or ill will, we do not believe that this is the standard adopted by most federal courts. In the leading case on point, the United States Court of Appeals for the Second Circuit held that the term "willfully" "denote[s] at least a voluntary, intentional violation of, and perhaps also a reckless disregard of, a known legal duty." *Citron*, 722 F.2d at 16; *see Young*, 536 N.W.2d at 2558 (noting that prior to the 1986 amendments to 18 U.S.C. § 2511(1), federal courts interpreted "willfully" to mean that a good faith belief that one's conduct was lawful was a valid defense). In other words, "liability under [the pre-1986] Title III — be it civil or criminal — cannot be established against any defendant without showing that he acted with intentional or reckless disregard of his legal obligations." *Citron*, 722 F.2d at 16-17 (quotation omitted). Because RSA 570-A:2, I, closely tracks the language of former 18 U.S.C. § 2511(1), we believe that "wilfully" in RSA 570-A:2, I, means that the defendant must act with an intentional or reckless disregard for the lawfulness of his conduct. In other words, the defendant has not violated RSA 570-A:2, I, if he has "a 'good faith' belief that [his] conduct was lawful." *Young*, 536 N.W.2d at 258.

■ "[T]he test of adequacy of any charge is whether, taken as a whole, it fairly presented the case to the jury in such a manner that no injustice was done to the legal rights of the litigants." *Rawson v. Bradshaw*, 125 N.H. 94, 100, 480 A.2d 37, 41 (1984) (quotation omitted). Since the trial court failed to instruct the jury properly on the appropriate *mens rea* for a violation of RSA 570-A:2, I, we reverse and remand for a new trial. While we reverse the jury verdict based on the improper jury instructions, we will address the defendant's remaining arguments to the extent that they may arise in a new trial. *See State v. Marcano*, 138 N.H. 643, 647, 645 A.2d 661, 664 (1994).

### III. Reasonable Expectation of Privacy

The defendant next argues that the trial court erred in denying his motion for a directed verdict on the invasion of privacy claim. He contends that because the therapist and guardian ad litem were charged with supervising the plaintiff's relationship with her daughter, the plaintiff could not reasonably expect her conversations with her daughter to remain private. The defendant also points

out that the plaintiff knew that the content of her conversations with her daughter was disputed.

In *Hamberger v. Eastman*, 106 N.H. 107, 110, 206 A.2d 239, 241 (1964), we recognized that a tort action based upon an intrusion upon the plaintiff's physical and mental solitude or seclusion must relate to "something secret, secluded or private pertaining to the plaintiff." Furthermore, "liability exists only if the defendant's conduct was such that he should have realized that it would be offensive to persons of ordinary sensibilities. It is only where the intrusion has gone beyond the limits of decency that liability accrues." *Id.* at 111, 206 A.2d at 242 (quotation omitted); *see* RESTATEMENT (SECOND) OF TORTS § 652B, comment *d* at 380 (1977). Similarly, recovery under RSA 570-A:11 requires a reasonable expectation by the plaintiff that her communications will not be intercepted. *See* RSA 570-A:1, II (1986).

At trial, the defendant's counsel conceded that the issue of whether the defendant's conduct exceeded the bounds of decency was an issue for the jury. The defendant's motion for a directed verdict was based solely on the position that the plaintiff failed to prove that she had an expectation of privacy. A motion for a directed verdict should not be granted unless the trial court finds "the evidence and all reasonable inferences therefrom, construed most favorably to the party opposing the motion, would not enable a jury to find for that party." *Arthur v. Holy Rosary Credit Union*, 139 N.H. 463, 465, 656 A.2d 830, 832 (1995). We will not disturb the trial court's ruling absent an abuse of discretion. *Id.* In this case, the trial court found sufficient evidence to support a jury's finding that the plaintiff had a reasonable expectation of privacy. The court acknowledged that the jury could consider that the daughter would divulge the content of the conversation to the therapist or others, but concluded that this did not prevent the jury from finding an expectation of privacy.

The trial court did not err in denying the motion for a directed verdict. Although the plaintiff could have expected the content of her conversations with her daughter to be repeated to the therapist, the jury could reasonably have concluded that the plaintiff did not expect her actual words and voice to be captured on tape. *See* RSA 570-A:1, II (requiring only that a person exhibit a reasonable expectation that her conversations will not be "subject to interception," not that the conversation will not be conveyed to a third person); *cf. State v. Lamontagne*, 136 N.H. 575, 579, 618 A.2d 849, 851 (1992) (distinguishing between aural acquisition of commu-

nications by recipient of the telephone call and calls that are monitored or recorded by a third party).

*IV. Damages*

The defendant next argues the trial court erred in denying his motion for a directed verdict on the grounds that the plaintiff failed to present sufficient evidence on the issues of causation and damages. The defendant contends that the plaintiff failed to present expert testimony that the defendant's conduct caused the plaintiff's mental distress. The defendant asserts that even if expert testimony was not needed to prove causation, the plaintiff's testimony was insufficient to establish the requisite degree of mental distress.

We first address the quantum of proof needed to allow a claim for emotional distress in an invasion of privacy tort to go to the jury. The defendant argues that invasion of privacy should be treated in the same manner as intentional infliction of emotional distress. *See Morancy v. Morancy*, 134 N.H. 493, 496, 593 A.2d 1158, 1159-60 (1991) (noting that intentional infliction of emotional distress requires "severe" emotional distress). We disagree. The defendant points to only one case in which invasion of privacy and intentional infliction of emotional distress have been treated alike. *See Cluff v. Farmers Insurance Exchange*, 460 P.2d 666, 670 (Ariz. Ct. App. 1969). The Supreme Court of Arizona, however, rejected the lower court's conclusion that invasion of privacy and intentional infliction of emotional distress should be treated in a like manner. *See Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 785-86 (Ariz. 1989) (decided in the context of false light invasion of privacy).

The RESTATEMENT (SECOND) OF TORTS treats damages for an invasion of privacy in a significantly different manner than damages for an intentional infliction of emotional distress. *Compare* RESTATEMENT (SECOND) OF TORTS § 652H (1977) (invasion of privacy) *with id.* § 46(1) & comments *j, h* (1965) (intentional infliction of emotional distress). Section 652H describes the damages that a plaintiff can recover for invasion of privacy:

> One who has established a cause of action for invasion of his privacy is entitled to recover damages for
>
> (a) the harm to his interest in privacy resulting from the invasion;
> (b) his mental distress proved to have been suffered if it is of a kind that normally results from such an invasion; and
> (c) special damages of which the invasion is a legal cause.

RESTATEMENT (SECOND) OF TORTS § 652H. Moreover, the commentary to section 652H reads: "The plaintiff may also recover damages for emotional distress or personal humiliation that he proves to have been actually suffered by him, if it is of a kind that normally results from such an invasion and it is normal and reasonable in its extent." *Id.* § 652H comment *b*.

In *Pulla v. Amoco Oil Co.*, 882 F. Supp. 836 (S.D. Iowa 1994), *aff'd in part, rev'd in part on other grounds*, 72 F.3d 648 (8th Cir. 1995), the federal court, relying on section 652H, distinguished between intentional infliction of emotional distress and invasion of privacy damages:

> Neither § 652H nor comment b to that section require "extreme" or a heightened degree of emotional distress or humiliation. On the contrary, the language of both mitigates against such a requirement because both stress that the mental damages must be of a kind that *normally results* from an invasion, and the comment requires that the damages also be normal and reasonable in extent.

*Id.* at 869; *see* D. ELDER, THE LAW OF PRIVACY § 2:3, at 28-29 (1991).

The defendant argues that without proof of severe emotional distress or expert testimony, proof of damages is too subjective to go to the jury. We disagree. Other courts have recognized that damages in cases of invasion of privacy are necessarily subjective in nature.

> Damages for mental suffering are recoverable without the necessity of showing actual physical injury in a case of a willful invasion of the right of privacy. This is so because the injury is essentially mental and subjective; no actual harm is done to the plaintiff's body. The term "mental anguish" implies a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

*Trevino v. Southwestern Bell Tel. Co.*, 582 S.W.2d 582, 584 (Tex. Civ. App. 1979) (citation omitted). Moreover, expert testimony is not required. *See Monroe v. Darr*, 559 P.2d 322, 327 (Kan. 1977) (holding that no expert need testify in an invasion of privacy suit and that

nervousness and trouble sleeping were sufficient damages to go to the jury).

The decision of whether to believe the plaintiff's testimony regarding her injuries is fundamentally a question of fact for the jury. "Although essentially subjective, genuine injury in this respect may be evidenced by one's conduct and observed by others. The jury's ability to hear and see the witnesses and to have the 'feel' of the case is a significant factor for the Court to consider . . . . " *Machleder v. Diaz*, 618 F. Supp. 1367, 1371 (S.D.N.Y. 1985) (citation and quotations omitted), *aff'd in part, rev'd in part on other grounds*, 801 F.2d 46 (2d Cir. 1986), *cert. denied*, 479 U.S. 1088 (1987).

■ In the case at bar, the plaintiff testified that she felt shocked, upset, invaded upon, wronged, violated, cheated, angry, distressed, and deceived. She also testified that it affected her in the following ways: "couldn't get it off my mind," "up a lot of nights," "crying," "affected my work," "lost weight," "didn't feel like eating." She testified that while she could not afford counseling, her family helped, she read many self-help books, and she attended seminars on stress sponsored by the local library. The plaintiff's mother also testified that the plaintiff was furious, disillusioned, upset, crying, angry, that the plaintiff spent "many, many nights not sleeping," and that she "didn't sleep and she didn't eat." We believe this is sufficient evidence for the issue of damages to go to the jury. *See Monroe*, 559 P.2d at 327; *Gonzales v. Southwestern Bell Tel. Co.*, 555 S.W.2d 219, 222-23 (Tex. Civ. App. 1977); *see also* ELDER, *supra* § 2:10, at 57-61 (describing damages recoverable for an invasion of privacy).

*V. Invocation of Fifth Amendment Right*

The defendant next contends that the trial court erred in requiring him to take the stand and invoke his Fifth Amendment right against self-incrimination. He argues that the trial court instead should have granted him a blanket privilege, preventing the plaintiff from asking any questions which would require him to invoke the Fifth Amendment. We agree that the trial court erred in requiring the defendant to invoke his right against self-incrimination in the presence of the jury.

Although instructing the jury that it may draw a negative inference from the defendant's invocation of his right against self-incrimination in a criminal case violates the Fifth Amendment, *see Griffin v. California*, 380 U.S. 609, 615 (1965), the Constitution does not preclude the jury from drawing a negative inference from

the defendant's invocation of his Fifth Amendment right in a civil case. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). Some federal courts allow a party to call a witness to the stand even if the witness has made known an intention to invoke the Fifth Amendment. *See Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 522 (8th Cir.), *cert. denied*, 469 U.S. 1072 (1984). There are a number of reasons that courts allow the jury to draw a negative inference in a civil case. First, excluding this information from the jury's consideration undermines the jury's search for the truth. *See RAD Services, Inc. v. Aetna Cas. and Sur. Co.*, 808 F.2d 271, 274-75 (3d Cir. 1986). Moreover, most of the reasons for preventing the State from utilizing the invocation of the right against self-incrimination in a criminal case are far less persuasive in a civil case. *See Rosebud Sioux Tribe*, 733 F.2d at 521-22. Unlike in a criminal case in which the State bears an extraordinarily high burden to prove its case, allowing the defendant in a civil case to invoke the privilege without the jury's knowledge places the plaintiff at an unfair disadvantage. *See id.* at 521. "[T]he privilege, when fully exploited, puts the private civil plaintiff at a disadvantage more severe than previously appreciated. Especially when civil liability allegedly arises from criminal conduct, the privilege precludes discovery and frustrates the truth-determining capacity of the litigation process to an alarming extent." Heidt, *The Conjurer's Circle — The Fifth Amendment Privilege in Civil Cases*, 91 YALE L.J. 1062, 1135 (1982). Allowing the plaintiff to call the defendant to the stand, even when the defendant intends to invoke the privilege, "reduce[s] the disadvantage plaintiffs suffer when the privilege weapon is used against them." *Id.*

New Hampshire, however, has adopted New Hampshire Rule of Evidence 512, which prohibits the jury in both civil and criminal cases from drawing negative inferences from the invocation of the right against self-incrimination. *See* 2 J. WEINSTEIN ET AL., WEINSTEIN'S EVIDENCE ¶ 513[03] (1996); N.H. R. EV. 1101(c). Rule 512 reads:

(a) *Comment or Inference Not Permitted.* The claim of a privilege, whether in the present proceeding or upon a prior occasion, is not a proper subject of comment by judge or counsel. No inference may be drawn therefrom.

(b) *Claiming Privilege Without Knowledge of Jury.* In jury cases, proceedings shall be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury.

(c) *Jury Instruction.* Upon request, any party against whom the jury might draw an adverse inference from a claim of privilege is entitled to an instruction that no inference may be drawn therefrom.

Rule 512(b) requires that the privilege be invoked outside of the presence of the jury only "to the extent practicable." *See Johnson v. State,* 770 S.W.2d 128, 132 (Ark. 1989); *In Interest of L.S.,* 748 S.W.2d 571, 575 (Tex. Ct. App. 1988). Courts in other States that have adopted a rule analogous to Rule 512 note that when a witness invokes the privilege unexpectedly or in a way that cannot be done outside of the presence of the jury, the rule is not violated. *E.g., Interest of L.S.,* 748 S.W.2d at 575. In most situations, however, the parties will know if the witness intends to invoke the Fifth Amendment, and the issue can be dealt with by a motion *in limine. See id.*

This case presents our first opportunity to address the scope of Rule 512. *See State v. Seymour,* 140 N.H. 736, 740-41, 673 A.2d 786, 790-91, *cert.denied,* 117 S. Ct. 146-47 (1996). We considered a similar issue prior to the adoption of the rules of evidence. In *State v. Bell,* 112 N.H. 444, 446, 298 A.2d 753, 755 (1972), the defendant called a witness to the stand who later asserted the privilege against self-incrimination in chambers. We stated:

> It is often said that the privilege against self-incrimination guaranteed by the fifth amendment to the United States Constitution and article 15, part I of the New Hampshire constitution is an option for the witness to refuse to answer each particular question as it is propounded, and not a prohibition of all further inquiry by the examiner. The rationale underlying this rule rests upon the fact that the privilege is a limited one, protecting the witness from responding to questions only if the answers would in fact have a tendency to subject him to prosecution. The court must necessarily make the final determination of whether a truthful and complete response might be incriminating, in order to protect against abuse of the privilege, and in most cases the court will be unable to give reasoned consideration to the privilege claim until the witness' refusal to answer a particular question is viewed in the light of all of the circumstances of the particular case.

*Id.* at 447, 298 A.2d at 756 (citations omitted); *see State v. O'Connell,* 131 N.H. 92, 94, 550 A.2d 747, 749 (1988). We further stated that it

was not always necessary for the witness to invoke the privilege after each question. We laid out a procedure for determining if a blanket privilege was appropriate:

> In order for the court to dispense with the usual procedure of requiring the witness to claim his privilege as each question is propounded and instead allow a blanket assertion of the privilege, the court should carefully question the witness as to questions proffered by counsel calling the witness. If it then appears that there is no relevant nonprivileged testimony which the witness can offer, where as here the witness is called to testify only on limited issues, the witness may be excused from further testifying upon his claim of privilege. To hold otherwise would be to exalt the general rule requiring particularized assertions of the claim beyond the point of its usefulness; it would result in an unnecessary consumption of time and further confuse the jury; and it would subject the witness to needless harassment.

*Bell*, 112 N.H. at 448, 298 A.2d at 757 (citations omitted). Although decided prior to the adoption of Rule 512, we believe that the procedure laid out in *Bell* reflects the policies embodied in Rule 512. Both *Bell* and Rule 512 require the trial court to take reasonable steps to insure that the jury is unaware that a witness has invoked the privilege against self-incrimination.

The defendant in this case did have relevant testimony regarding his relationship with the plaintiff and their daughter. He was not, however, asserting a blanket privilege from testifying at all, but only from testifying to the issues of the taping. On direct examination he testified to a number of questions about his relationship and his understanding of the letter from the guardian ad litem. The plaintiff then asked eleven questions, forcing the defendant in response to each to assert his right against self-incrimination.

■ Before trial, the defendant filed a motion *in limine*, asserting a blanket privilege from testifying regarding the tape recording and requesting the court to prevent the plaintiff from posing questions to the defendant on this issue. The court denied the motion. Although the trial court knew that the defendant would invoke his Fifth Amendment privilege when he testified at trial, it made no attempt at the hearing on the motion *in limine* to discover whether there was a basis for the invocation of the privilege, or explain why it was necessary for the defendant to invoke the

privilege in the jury's presence. *See Bell*, 112 N.H. at 448, 298 A.2d at 757. Because it was possible for the trial court to deal with the issue of the invocation of the defendant's Fifth Amendment right without the jury's knowledge, Rule 512(b) has been violated. We do not need to consider the plaintiff's arguments that the court's instruction cured any prejudice that occurred or that the admission of this evidence was harmless error because we remand for a new trial on other grounds.

## VI. Jury Instructions Regarding Implied Consent

Finally, the defendant argues that the trial court erred by failing to instruct the jury that consent to the taping

> can be implied when a person's behavior shows that the person acquiesced to taping by doing little or nothing to protect her rights against taping. A determination of acquiescence will ordinarily include language or acts which tend to prove, or disprove, that a party knows of, or assents to, encroachments in the routine expectation that the telephone conversations are private.

The plaintiff contends that this issue was not preserved for appeal because, although the defendant submitted the requested instruction to the court, the defendant failed to object to the instructions given by the court. While we agree this issue was not properly preserved, *see Broderick v. Watts*, 136 N.H. 153, 170, 614 A.2d 600, 610 (1992), we will address the merits of this issue because it is likely to arise at a new trial.

"The scope and wording of jury instructions is generally within the sound discretion of the trial court." *State v. W.J.T. Enterprises*, 136 N.H. 490, 494, 618 A.2d 806, 808 (1992) (quotation omitted). "[T]he test of adequacy of any charge is whether, taken as a whole, it fairly presented the case to the jury in such a manner that no injustice was done to the legal rights of the litigants." *Peterson v. Gray*, 137 N.H. 374, 377, 628 A.2d 244, 246 (1993) (quotation omitted).

The trial court instructed the jury: "Consent may be express or it may be implied from the conduct of the person under all the surrounding circumstances." This instruction fairly covered the issue of consent. *See* RESTATEMENT (SECOND) OF TORTS § 892(1) (1979). The defendant cites *Griggs-Ryan v. Smith*, 904 F.2d 112, 116 (1st Cir. 1990), to support his request for an instruction including the concept of acquiescence.

■ A party is "not entitled to the exact language of [his] requested instruction." *Johnston v. Lynch*, 133 N.H. 79, 93, 574 A.2d 934, 942 (1990). The trial court's instruction fully and concisely informed the jury that they may consider not only the words of the plaintiff but also the plaintiff's actions in determining whether she consented to being taped. This is the appropriate standard for implied consent, *see* RESTATEMENT (SECOND) OF TORTS § 892; *cf. Peerless Ins. Co. v. Travelers Ins. Co.*, 104 N.H. 411, 416, 188 A.2d 335, 338 (1963) (finding implied consent based on conduct of the parties and surrounding circumstances), and, therefore, the trial court did not err in denying the defendant's requested instruction.

*VII. Remaining Issues*

The defendant argues that RSA 570-A:1, IV(a)(1) (Supp. 1991) (amended 1995) creates a statutory exemption for domestic eavesdropping. Because application of RSA 570-A:1, IV(a)(1) requires factual findings not made by the trial court, we will not address this issue on appeal. Additionally, the plaintiff's cross-appeal asserts that the trial court erred in granting the defendant's motion for remittitur and awarding insufficient attorney's fees and costs. Because we reverse and remand for a new trial, we do not need to address these issues.

*Reversed and remanded.*

All concurred.