Remsburg v. Docusearch et al.          CV-00-211-B     04/25/02

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Helen Remsburg, Administrator**
**of the Estate of Amy Lynn Boyer**


    **v.**                                     Civil No. 00-211-B
                                        Opinion N0. 2002 DNH 090
**Docusearch, Inc., et al.**


ORDER OF CERTIFICATION


Helen Remsburg, administrator of the estate of her daughter,
Amy Lynn Boyer, has sued defendants Docusearch, Inc., Wing and a
Prayer, Inc., Daniel Cohn, Kenneth Zeiss and Michele Gambino for
wrongful death; invasion of privacy through intrusion upon
seclusion; invasion of privacy through commercial appropriation
of private information; violation of the federal Fair Credit
Reporting Act, 15 U.S.C. §§ 1681a et seq.; and violation of the
New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. 358-
A:1 et seq. Defendants Docusearch, Inc., Wing and a Prayer,
Inc., Daniel Cohn and Kenneth Zeiss have filed motions for

summary judgment. The material facts supporting the motions are undisputed. The motions, however, raise important questions of New Hampshire law that should be resolved by the New Hampshire Supreme Court rather than a federal court. Thus, I certify the following questions of law pursuant to New Hampshire Supreme Court Rule 34:

(1) Under the common law of New Hampshire and in light of the undisputed facts presented by this case, does a private investigator or information broker who sells information to a client pertaining to a third party have a cognizable legal duty to that third party with respect to the sale of the information?

(2) If a private investigator or information broker obtains a person's social security number from a credit reporting agency as a part of a credit header without the person's knowledge or permission and sells the social security number to a client, does the individual whose social security number was sold have a cause of action for intrusion upon her seclusion against the private investigator or information broker for damages caused by the sale of the information?

(3) When a private investigator or information broker obtains a person's work address by means of a pre-textual telephone call and sells the work address to a client, does the individual whose work address was deceitfully obtained have a cause of action for intrusion upon her seclusion against the private investigator or information broker for damages caused by the sale of the information?

(4)  If a private investigator or information broker obtains a social security number from a credit reporting agency as a part of a credit header, or a work address by means of a pretextual telephone call, and then sells the information, does the individual whose social security number or work address was sold have a cause of action for commercial appropriation against the private investigator or information broker for damages caused by the sale of the information?

(5)  If a private investigator or information broker obtains a person's work address by means of a pre-textual telephone call, and then sells the information, is the private investigator or information broker liable under N.H. Rev. Stat. Ann. § 358-A to the person it deceived for damages caused by the sale of the information?

## I.  BACKGROUND

Docusearch, Inc. and Wing and a Prayer, Inc. ("WAAP") jointly own and operate an internet-based investigation and information service known as Docusearch.com.[1]  Daniel Cohn and Kenneth Zeiss each own 50% of each company's stock.  Cohn serves as president of both companies and Zeiss serves as a director of WAAP.  Cohn is licensed as a private investigator by the State of Florida and Palm Beach County Florida.

----

[1] For the remaining purposes of this Order, WAAP and Docusearch, Inc. are indistinguishable.  Therefore, I will refer to both companies, and the interactive website they operate, as "Docusearch."

On July 29, 1999, New Hampshire resident Liam Youens contacted Docusearch through its internet website and requested the date of birth for Amy Lynn Boyer, another New Hampshire resident. Youens provided Docusearch his name, New Hampshire address, and a contact telephone number, (603) 886-0184. He paid the $20 fee by Mastercard. Zeiss placed a telephone call to Youens in New Hampshire on the same day. Zeiss cannot recall the reason for the phone call, but speculates that it was to verify the order. The next day, July 30, 1999, Docusearch provided Youens with the birth dates for several Amy Boyers, but none were for the Amy Boyer that Youens had in mind. In response, Youens emailed Docusearch and asked if it would be possible to get better results using Boyer's home address, which he provided. Youens then gave Docusearch a new contact phone number, (603) 889-8078.

Later that same day, Youens again contacted Docusearch and placed an order for Boyer's social security number, paying the $45 fee by Mastercard. On August 2, 1999, Docusearch obtained Boyer's social security number from a credit reporting agency as

a part of a credit header[2] and provided it to Youens.  The next day, Youens placed an order with Docusearch for Boyer's employment information, paying the $109 fee by Mastercard.  He also provided Docusearch with the same contact phone number he had provided originally, (603) 886-0184.  Docusearch phone records indicate that Zeiss placed a phone call to Youens on August 6, 1999.  The phone number used - (603) 889-8078 - was the one Youens had provided with his follow-up inquiry regarding Boyer's birth date.  The phone call lasted for less than one minute, and no record exists concerning its topic or whether Zeiss was able to speak with Youens.  On August 20, 1999, having received no response to his latest request, Youens placed a second request for Boyer's employment information, again paying the $109 fee by Mastercard.  On September 1, 1999, Docusearch refunded Youens' first payment of $109 because its efforts to fulfill his first request for Boyer's employment information had failed.

_____

[2] A credit header includes the name, address, social security number and telephone number of a consumer and is typically provided at the top of a credit report.  See Individual Reference Services Group v. F.T.C., 145 F. Supp.2d 6, 14 (D.D.C. 2001) (citing the sworn statement of the credit reporting agency involved in that litigation).

With his second request for Boyer's employment information pending, Youens placed yet another order for information with Docusearch on September 6, 1999. This time, he requested a "locate by social security number" search for Boyer. Youens paid the $30 fee by Mastercard, and received the results of the search - Boyer's Nashua, New Hampshire home address - on September 7, 1999.

On September 8, 1999, Docusearch informed Youens that Boyer worked for Dr. John Bednar at 5 Main Street, Nashua, New Hampshire. Docusearch acquired Boyer's business address through a subcontractor, Michele Gambino. Gambino, in turn, obtained the information by placing a "pretext" telephone call to Boyer in New Hampshire. Gambino lied about who she was and the purpose of her call in order to convince Boyer to reveal her employment information. Gambino had no contact with Youens. Nor did she have any information as to why Youens was requesting the information.

On October 15, 1999, Youens drove to Boyer's workplace and fatally shot her as she left work. Youens then shot and killed himself. A subsequent police investigation revealed that Youens kept firearms and ammunition in his bedroom, and maintained a

website containing references to stalking and killing Boyer, as well as other information and statements related to violence and killing. This information was unknown to the defendants when Docusearch responded to Youens' information requests. The record does not indicate whether defendants could have discovered the existence of the website through the use of internet search engines.

## II. DISCUSSION

### A. Negligence

The familiar elements of a negligence claim are "that the defendant owed the plaintiff a duty, that the duty was breached, that the plaintiff suffered an injury, and that the defendant's breach was the proximate cause of the injury." Ronayne v. State, 137 N.H. 281, 284 (1993). This case presents a threshold question of law not previously determined by the New Hampshire Supreme Court as to when, if ever, a commercial information broker or private investigator owes a duty to the subject of a request for information.

The New Hampshire Supreme Court has described in a recent opinion how it determines whether to recognize a duty in a particular case. In <u>Hungerford v. Jones</u>, the court stated:

> When determining whether a duty is owed, we examine the societal interest involved, the severity of the risk, the likelihood of occurrence, the relationship between the parties, and the burden upon the defendant.

143 N.H. 208, 211 (1998) (quotations and internal citations omitted). The court has also emphasized that the question of whether a duty exists is "inextricably bound together" with the question of whether injury to the plaintiff is foreseeable. <u>Iannelli v. Burger King Corp.</u>, 145 N.H. 190, 193-94 (2000) (quoting <u>Manchenton v. Auto Leasing Corp.</u>, 135 N.H. 298, 304 (1992)). Thus, it has held that "[u]nder New Hampshire law, 'whether a defendant's conduct creates a sufficiently foreseeable risk of harm to others sufficient to charge the defendant with a duty to avoid such conduct is a question of law.'" <u>Id.</u> at 193 (quoting <u>Manchenton</u>, 135 N.H. at 304).

The facts in this case that bear on the legal issues of duty and foreseeability are undisputed. Thus, in ruling on defendants' summary judgment motion, I could answer the legal question I propose to certify myself. If I were to do so,

however, I would deprive the parties of an authoritative answer to this difficult question of state law and deny the New Hampshire Supreme Court a chance to explain the law in an area that it has not previously had an opportunity to address. See Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974). Accordingly, I certify the following question to the New Hampshire Supreme Court concerning Remsburg's negligence claim:

> Under the common law of New Hampshire and in light of the undisputed facts presented by this case, does a private investigator or information broker who sells information to a client pertaining to a third party have a cognizable legal duty to that third party with respect to the sale of the information?

## B. **Invasion of Privacy**

### 1. Intrusion Upon Seclusion

Remsburg has brought two claims for invasion of Boyer's privacy. Under the first, Remsburg argues that Boyer had a reasonable expectation of privacy in her personal information, including her social security number and her work address. Remsburg further asserts that Docusearch knew or should have known that it would be offensive to a person of ordinary sensibilities to have this personal information disclosed for no

legitimate reason and "without authorization, justification, screening, security, notice or warning." Amended Complaint, ¶47. Therefore, Remsburg concludes, when Docusearch disclosed Boyer's personal information, it intruded upon her seclusion and should be liable for damages flowing therefrom.

New Hampshire law recognizes the tort of intrusion upon seclusion. Its elements include: (1) an invasion of something secret, secluded or private pertaining to the plaintiff (here, to Boyer); and (2) conduct by the defendant that exceeds the limits of decency, such that the defendant should have realized that it would be offensive to a person of ordinary sensibilities. Fischer v. Hooper, 143 N.H. 585, 590 (1999) (citing Hamberger v. Eastman, 106 N.H. 107, 110-11 (1964)).

The New Hampshire Supreme Court has decided two cases involving intrusion upon seclusion, and neither addressed the privacy interest at issue in this case. See Fischer, 143 N.H. 585; Hamberger, 106 N.H. 107. Docusearch has set forth a detailed argument explaining why Boyer did not have a privacy interest in either her social security number or her work address. Remsburg responds by arguing that the offensive method

Docusearch used to obtain the information is more important than the actual information obtained, and that pretextual telephone calls are particularly offensive.

The body of New Hampshire case law concerning intrusion upon seclusion is limited. The privacy interests at issue in the two cases decided by the New Hampshire Supreme Court involved conversations between a husband and wife in their bedroom, and telephone conversations between a mother and minor child. In both cases, the conversations were taped unbeknownst to those conversing. No New Hampshire court has explicitly decided whether a person has a privacy interest in her biographical information, and if so, what methods used to obtain that information would constitute an intrusion upon the person's seclusion. Therefore, I certify the following questions concerning these claims:

> (1) If a private investigator or information broker obtains a person's social security number from a credit reporting agency as a part of a credit header without the person's knowledge or permission and sells the social security number to a client, does the individual whose social security number was sold have a cause of action for intrusion upon her seclusion against the private investigator or information broker for damages caused by the sale of the information?

(2) When a private investigator or information broker obtains a person's work address by means of a pretextual telephone call and sells the work address to a client, does the individual whose work address was deceitfully obtained have a cause of action for intrusion upon her seclusion against the private investigator or information broker for damages caused by the sale of the information?

## 2. Commercial Appropriation

Next, Remsburg argues that Docusearch committed the tort of commercial appropriation when it obtained her personal information and sold it for profit. Commercial appropriation occurs when a defendant makes use of a plaintiff's name or likeness "to pirate the plaintiff's identity for some advantage of his own, [such] as by impersonation to obtain credit or secret information. . . ." W. Page Keeton et al., Prosser and Keeton on Torts, 852 (5th ed. 1984). No common law addressing commercial appropriation exists in New Hampshire. Therefore, whether this tort is to be recognized in New Hampshire, and whether it applies in the circumstances of this case, are appropriate topics for certification, and I accordingly certify the following question:

> If a private investigator or information broker obtains a social security number from a credit reporting agency as a part of a credit header, or a work address by means of a pretextual telephone call, and then sells the information, does the individual whose social security number or work address was sold have a cause

-12-

of action for commercial appropriation against the private investigator or information broker for damages caused by the sale of the information?

## C. **New Hampshire Consumer Protection Act**

Finally, Remsburg argues that Docusearch violated the New Hampshire Consumer Protection Act ("Act"), which prohibits the use of "any unfair or deceptive act or practice in the conduct of any trade or commerce." N.H. Rev. Stat. Ann. § 358-A:2. This includes, inter alia, any practice or act "[c]ausing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another." To date, no case law interpreting this Act has involved deceptive practices by private investigators or information brokers, such as use of pretext telephone calls.

Docusearch obtained Boyer's social security number from a credit reporting agency and resold it for profit. It then hired an agent to make a pretextual phone call to Boyer in order to obtain her work address. The agent deceived Boyer regarding who she was and the purpose of her call. Again, Docusearch profited by selling this information. Whether such actions violate the

Act is a question of law best decided by the New Hampshire Supreme Court.  Therefore, I certify the following question:

> If a private investigator or information broker obtains a person's work address by means of a pretextual telephone call, and then sells the information, is the private investigator or information broker liable under N.H. Rev. Stat. Ann. § 358-A to the person it deceived for damages caused by the sale of the information?

SO ORDERED.


_____
Paul Barbadoro
Chief Judge


April 25, 2002

cc:  David M. Gottesman, Esq.
     Dona Feeney, Esq.
     Carol L. Hess, Esq.
     Michael J. Iacopino, Esq.
     Steven B. Ross, Esq.