# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2022-0267, <u>J.T. v. J.B.</u>, the court on January 31, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The defendant appeals a final stalking protective order issued against him by the Circuit Court (<u>Alfano</u>, J.). <u>See</u> RSA 633:3-a (2018). The defendant argues on appeal that the trial court erred when it "refused to enter [his] surveillance video and screen shot into evidence." (Capitalization and bolding omitted). We remand for further proceedings in accordance with this order.

The plaintiff's stalking petition was based on two incidents — one involving the defendant and his truck, and a second involving the defendant and his shotgun. At the hearing on the petition, the plaintiff testified that in the first incident, while the plaintiff was getting his mail in his own truck, the defendant "swerved" his truck towards him, missing the plaintiff's mirror "by about an inch," and scaring the plaintiff "incredibly." The plaintiff testified that in the second incident, which occurred approximately two weeks later, he had driven his truck to the end of his driveway to trim branches from trees on his property. While he was cutting the branches, the defendant came out of his house with a gun "on his shoulder," and started yelling at the plaintiff to "get the eff out of here" and "[w]hat the eff are you doing?" According to the plaintiff, the defendant then patted the side of his hip "where his gun was slung and said, how effing tough do you think you are? Let's go meet out on the street; we'll see how tough you are." As a result, the plaintiff testified, he was "extremely nervous," "[s]tarted shaking," has "been nervous since then," "will not walk down [his] driveway anymore," and "keep[s] [his] doors locked."

Prior to testifying, the defendant informed the court that he had "video and audio of the words that were exchanged" during the second incident — obtained through a surveillance camera on his house — and requested to present that evidence. The trial court informed the defendant that, under New Hampshire law, he did "not have the right to record a voice of any person without their consent" and, therefore, it would violate the law to enter the video into evidence. <u>See</u> RSA ch. 570-A. The court reasoned, however, that showing a video "without a voice is different," so if the defendant "want[ed] to show a video that has no voice to it," that would be allowed under the statute. When the defendant then sought confirmation whether he could "mute the video and

show it," the court replied that "muting it's a different issue. The court then stated that it would be the defendant's decision whether to mute the video and show the pictures, or the defendant could "just tell [the court] what happened" and then the court would "figure out about the video."

In his testimony, the defendant admitted that during his confrontation with the plaintiff he had a shotgun on his shoulder on a sling, and that he twice said to the plaintiff to "come on and meet [him] in the road." He testified that when he told the plaintiff to "get the eff out of here," the plaintiff "laughed" and "told [him] to shut up." The defendant also testified that the video surveillance camera showed that "a minute or so" after he had returned inside his house, the plaintiff was driving down his driveway, which, the defendant argued, proved that the plaintiff's testimony that he "fle[d] for his life as [the defendant] was standing there patting [his] gun [was] a complete falsehood." Despite indicating that it would do so, the trial court never reached a decision whether the defendant should be allowed to introduce the surveillance video without the audio.

On appeal, the defendant argues that the "surveillance video, including the audio could in no reasonable manner" fall within RSA 570-A:1 because "no reasonable person could claim to have a 'reasonable expectation'" that his words were not being recorded where "two neighbors [were] participating in a shouting match adjacent to a town road." He asserts that, due to the trial court's error, he "was unlawfully prevented from presenting his full defense" and, therefore, the matter should be remanded to the trial court "to permit [him] to present all evidence in his defense."

With the exception of certain instances not applicable here, a person is guilty of a class B felony if, "without the consent of all parties to the communication, the person . . . [w]ilfully intercepts . . . any . . . oral communication" or "[w]ilfully uses . . . any electronic, mechanical, or other device to intercept any oral communication." RSA 570-A:2, I(a), (b) (Supp. 2022). "Oral communication" is defined as "any verbal communication uttered by a person who has a reasonable expectation that the communication is not subject to interception, under circumstances justifying such expectation." RSA 570-A:1, II (Supp. 2022). "Intercept" is defined as "the aural or other acquisition of, or the recording of, the contents of any . . . oral communication through the use of any electronic, mechanical, or other device." RSA 570-A:1, III (Supp. 2022). "Whenever any . . . oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court . . . if the disclosure of that information would be in violation of this chapter." RSA 570-A:6 (Supp. 2022).

As applicable to this case, the recording of any oral communication is prohibited by the statute only if the person who uttered the verbal communication had "a reasonable expectation that the communication [was] not subject to interception, under circumstances justifying such expectation." RSA 570-A:1, II; see Fischer v. Hooper, 143 N.H. 585, 590 (1999). The trial court's ruling that admission of the surveillance video and audio into evidence would violate the law does not contain any analysis of this statutory requirement. Given that resolving that issue requires factual findings, we remand the matter to the trial court. See Fischer, 143 N.H. at 598 (declining to address the issue whether RSA 570-A:1, IV(a) (1) creates a statutory exemption for domestic eavesdropping because the application of that statute "requires factual findings not made by the trial court"). Likewise, on remand, the trial court should, if necessary, determine whether the video without the audio is admissible.

Further processing of this appeal is stayed until the trial court provides its ruling on the statutory requirement in RSA 570-A:1, II in accordance with this order. We otherwise retain jurisdiction of this appeal. In light of our decision, we need not address the defendant's remaining arguments.

<u>Remanded</u>.

MACDONALD, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**

3