Carroll
No. 2006-577

MARIANNA L. CAYTEN & a.

v.

NEW HAMPSHIRE DEPARTMENT OF ENVIRONMENTAL SERVICES & a.

Argued: March 15, 2007
Opinion Issued: July 13, 2007

*Conservation Law Foundation*, of Concord (*Bradford W. Kuster* on the brief and orally), for the petitioners.

*Kelly A. Ayotte*, attorney general (*Jennifer J. Patterson*, senior assistant attorney general, on the brief and orally), for respondent New Hampshire Department of Environmental Services.

*Normandin, Cheney & O'Neil, PLLC*, of Laconia (*Regina A. Nadeau* on the brief and orally), for intervenor Laurie J. Hall, Trustee of the Cambi Squam Lake Realty Trust.

*Nixon Peabody LLP*, of Manchester, (*Kevin M. Fitzgerald* and *Paul M. Lanagan* on the brief), for Squam Lakes Association, as *amicus curiae*.

BRODERICK, C.J. In this case, we are called upon to delineate the relationship between New Hampshire's wetlands statute, RSA chapter 482-A (2001 & Supp. 2006), and the Comprehensive Shoreland Protection Act (CSPA), RSA chapter 483-B (2001 & Supp. 2006), in the context of an abutter's challenge to the issuance of a dredge and fill permit for the

construction of a dug-in boathouse. Specifically, intervenor Laurie J. Hall, as trustee of the Cambi Squam Lake Realty Trust (Cambi), appeals a decision of the Superior Court (*O'Neill*, J.) overturning a decision of the New Hampshire Wetlands Council (wetlands council or council) to affirm the decision of the wetlands bureau (wetlands bureau or bureau) of the New Hampshire Department of Environmental Services (DES) to issue a dredge and fill permit to Cambi. That permit would allow Cambi to dredge a portion of the Squam Lake lakebed, excavate a portion of the bank, and construct a dug-in boathouse. Cambi also appeals the trial court's denial of its motion to strike certain parties. We reverse and remand.

I

The following facts are not in dispute. Cambi owns a parcel of real estate along the shore of Squam Lake in Bean Cove. In August 2002, Cambi filed a standard dredge and fill application with the wetlands bureau pursuant to RSA chapter 482-A and RSA 485-A:17 (2001). In its application, Cambi proposed to dredge 310 square feet (twenty-three cubic yards) of lakebed, excavate 240 square feet (thirty-six cubic yards) of bank, and install ninety square feet of rip-rap, for a total impact of 640 square feet. The proposed dredging and excavation were part of a larger project, which included the construction of a 918-square-foot dug-in boathouse. A dug-in boathouse is one located over an inlet dredged into the shoreline as opposed to one located in or over the water.

In response to the bureau's request for more information, Cambi submitted revised project specifications that included: (1) changing the location of the boathouse so that it was located in an upland area landward of the bank of the lake rather than over the lake; (2) increasing the amount of lakebed dredging to 600 square feet (forty-five cubic yards); (3) decreasing the amount of bank excavation to 156 square feet (twenty-three cubic yards); and (4) adding 400 square feet of temporary impacts during construction. The net result was an overall increase in impacts on protected wetlands to 1,156 square feet.

In April 2003, the bureau granted Cambi a dredge and fill permit, explaining:

> The Department of Environmental Services (DES) Wetlands Bureau has reviewed and approved [Cambi's] application to . . . dredge 45 [cubic yards] from 600 [square feet] of lakebed and excavate 1064 [square feet] along 23 linear [feet] of shoreline to construct a 1 slip 24 [foot] x 32 [foot] dug-in boathouse with 140 [square feet of] storage/entry space on the southeast corner of

the boathouse, [and] install 30 linear [feet] of rip-rap to stabilize the edges of the dredged inlet . . . .

The 1,064 square feet of excavation includes: (1) 156 square feet of bank excavation; (2) 768 square feet for the footprint of the boathouse itself; and (3) 140 square feet of storage/entry space. In its decision granting approval, the bureau found, among other things:

> 2. The need for the proposed impacts has been demonstrated by the applicant per [New Hampshire Administrative Rules, Env-]Wt 302.01.

> 3. The applicant has provided evidence which demonstrates that this proposal is the alternative with the least adverse impact to areas and environments under the department's jurisdiction per [Rule Env-]Wt 302.03.

> 4. The applicant has demonstrated by plan and example that each factor listed in [Rule Env-]Wt 302.04(a), Requirements for Application Evaluation, has been considered in the design of the project.

In addition, as a condition of approval, the bureau required that "[a]ll activity shall be in accordance with the Comprehensive Shoreland Protection Act, RSA 483-B."

After the bureau approved Cambi's application, Marianna and Gene Cayten, who are abutting property owners, asked the bureau to reconsider its issuance of Cambi's permit. The motion for reconsideration did not raise the issue of inadequate notice to other alleged abutters. The bureau affirmed its approval. Among other things, the bureau ruled that "[t]he Applicant has satisfied the requirements of [New Hampshire Administrative] Rule[s], [Env-]Wt 402.09(b) [currently Rule 402.08(b)] relative to allowing the construction of a boathouse over a dredged inlet."

Subsequently, and purportedly on behalf of themselves and approximately forty "supporting individuals," the Caytens filed a petition of appeal with the wetlands council, asking it to rescind the dredge and fill permit for Cambi's boathouse. The council denied the appeal as well as the Caytens' motion for reconsideration. Then, in an action captioned "In re: Appeal of Marianna L. and C. Gene Cayten, et al[.]," the Caytens and "other property owners on Squam Lake within ¼ mile of the proposed project" petitioned the superior court pursuant to RSA 482-A:10, I, VIII. In the superior court, the Caytens prevailed on the merits. Specifically, the trial court ruled that "the Bureau and the Council are required as a matter of law to apply the standards laid out in the wetlands permitting

regulations, to the upland areas indicated in the plans for the ... Cambi propert[y]."

We now turn to the facts concerning the proper parties to this action. The petition of appeal to the wetlands council began by stating: "We, the following individuals, hereby appeal ...." The term "following individuals" referred to a list of supporting individuals that includes Rev. Richard R. and Dr. Happy Craven Fernandez, Thomas S. and Cynthia S. Stewart, and Donald and Linda Hartrick (collectively "disputed petitioners"). The petition identified the supporting individuals as "lakefront owners in and around Bean Cove and in and around the subject property of the proposed dug-in boathouse." However, only the Caytens signed the petition. Unlike the Caytens, who Cambi had listed as abutters and who had received notice of Cambi's application and approval, the disputed petitioners were not listed as abutters and did not receive notice. However, the issue of notice was not raised in the petition to the wetlands council.

While the Caytens' appeal was pending before the council, Cambi moved to dismiss all the supporting individuals, including the disputed petitioners, for lack of standing and for failure to abide by the procedural requirements for filing an appeal. Specifically, Cambi argued that the supporting individuals: (1) lacked standing because they were not abutters and, therefore, were not "aggrieved parties"; and (2) were not entitled to file an appeal with the council because they did not file with the bureau a motion to reconsider its decision to grant the permit. Over the Caytens' objection, the council granted Cambi's motion to dismiss the supporting individuals, explaining that "[t]he persons listed as 'supporting individuals' do not have proper standing to be considered as appellants in this appeal, nor have they abided by the procedural requirements [of RSA 482-A:10, I, II and III]." Accordingly, the council ruled that "Marianna and Gene Cayten are the only persons to be considered appellants in this appeal." Neither the Caytens nor any of the supporting individuals moved for reconsideration. Subsequently, the disputed petitioners moved to intervene. The council denied those motions, explaining that each of the disputed petitioners had failed to carry his or her burden of "demonstrat[ing] how [his or her] rights might be directly affected by the outcome of [the] appeal." None of the disputed petitioners moved for reconsideration.

After the council granted Cambi's motion to dismiss the supporting individuals from the appeal and denied the motions to intervene, the Caytens filed a pleading titled "Appellants['] Motion Challenging Lack of Proper Notice to Abutters in Interest," in which they claimed that Cambi had failed to satisfy statutory and regulatory notice requirements because it failed to provide notice to all owners of waterfront property within a

quarter mile of the proposed project. Among other relief, the Caytens asked that "[t]he permit proceedings be re-opened by providing notice to all abutters of the permit application and proposed project [and that] [a]ll abutters be provided the opportunity to participate in the permitting process as required by RSA 482-A and the regulations promulgated thereunder." The Caytens' motion was initially denied in a preliminary ruling. The Caytens requested a decision by the full council. The council denied the motion on grounds that the Caytens failed to raise the issue in their request for reconsideration before the wetlands bureau, and were thus precluded from raising it on appeal to the council. *See* RSA 482-A:10, II. The Caytens did not request reconsideration of the council's decision and order.

In their appeal to the superior court, the petitioners argued, among other things, that Cambi and the bureau failed to provide proper notice to all abutters as required by the wetlands statute and applicable rules. In the caption of the appeal, the appealing parties are identified as "Marianna L. and C. Gene Cayten, et al." The section of the petition titled "Parties and Jurisdiction" further explains:

> The Appellants Marianna L. and C. Gene Cayten, et al., participated in the permit proceedings below, and filed on June 24, 2003 the appeal to the Wetlands Council docketed as No. 03-08 WtC. The Appellants also include other property owners on Squam Lake within ¼ mile of the proposed project, defined as "abutters" for notice purposes, found by the Wetlands Council not to have standing to intervene, which is appealed below.

While the superior court appeal was pending, Cambi moved to strike: (1) the disputed petitioners as parties to the appeal; and (2) two counts of the petition, including the claim that Cambi and the bureau failed to provide proper notice to all abutters. The trial court denied Cambi's motion to strike the disputed petitioners, relying upon RSA 482-A:10, XII. The trial court also denied Cambi's motion to strike the claim regarding notice, ruling "that the 'notice' issue merits a further hearing on the merits."

On appeal, both Cambi and DES challenge the superior court's decision on the merits, and Cambi also challenges the trial court's decision allowing the disputed petitioners to be parties. However, neither Cambi nor DES challenges the trial court's decision not to strike the claim that Cambi and the bureau failed to provide adequate notice to other abutters.

## II

The trial court's review of wetlands council decisions is governed by RSA 482-A:10, XI, which provides:

> On appeal to the superior court, the burden of proof shall be upon the party seeking to set aside the decision of the council to show that the decision is unlawful or unreasonable. . . . The council's decision shall not be set aside or vacated, except for errors of law, unless the court is persuaded, by a preponderance of the evidence before it, that said decision is unjust or unreasonable.

We, in turn, will not disturb the trial court's decision unless it is unsupported by the evidence or legally erroneous. *Greenland Conservation Comm'n v. N.H. Wetlands Council,* 154 N.H. 529, 533 (2006).

## III

We begin with Cambi's challenge to the trial court's decision to deny its motion to strike the disputed petitioners as parties to this action. According to Cambi, the trial court committed legal error because it construed RSA 482-A:10, XII in a manner that contradicts RSA 482-A:10, VIII.

The statutory provisions governing appeals from decisions of the wetlands bureau provide, in pertinent part:

> I. Any person aggrieved by a decision made by the department under RSA 482-A:3 . . . may apply for reconsideration by the department, and then may appeal to the wetlands council and to the superior court as provided in this section. A person aggrieved under this section shall include without limitation, the applicant and any person required to be noticed by mail in accordance with RSA 482-A:8 and RSA 482-A:9.

> . . . .

> VIII. Any person aggrieved by a decision of the council after reconsideration may appeal to the superior court for the county where the land in question is located by petition within 30 days of issuance of such decision. . . . No ground not set forth in the application for reconsideration shall be given any consideration by the court unless the court for good cause shown shall allow the appellant to specify additional grounds.

> . . . .

> XII. Any person whose rights may be directly affected by the outcome of the appeal may appear and become a party, or the

court may order such persons to be joined as parties as justice may require.

RSA 482-A:10. Regarding notice, the wetlands statute provides that at the time of application, the applicant shall provide notice to "abutters, as defined in the rules of the department," RSA 482-A:3, I, and that during the public comment and hearing phase of review, "notice shall be mailed to all known abutting landowners," RSA 482-A:9. The rules of the department define "abutter" as follows:

> "Abutter" means any person who owns property immediately adjacent and contiguous to the property on which the project will take place. This does not include those properties across a public road. An abutter includes an owner of any flowage rights on or immediately adjacent to the property on which the project will take place. If the project is located on waterfront or another area which by its configuration would cause the project to affect non-contiguous properties, owners of those properties are considered as abutters. The term does not include the owner of a parcel of land located more than one-quarter mile from the limits of the proposed project.

N.H. ADMIN. RULES, Env-Wt 101.02.

Based upon the language of RSA 482-A:10, XII, the trial court ruled that notwithstanding the statutory requirement that a superior court appeal be preceded by a motion to reconsider at the council level, the disputed petitioners were entitled to be parties to the superior court appeal because the statute allows "[a]ny person whose rights may be directly affected by the outcome of the appeal [to] appear and become a party." In so ruling, the trial court necessarily determined that the disputed petitioners were "person[s] whose rights may be directly affected by the outcome of the appeal," an issue that had been decided against them in a wetlands council decision of which they did not move for reconsideration.

Interpretation of a statute is a question of law, which we review *de novo*. *Appeal of Lorette*, 154 N.H. 271, 272 (2006). We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *In the Matter of Liquidation of Home Ins. Co.*, 154 N.H. 472, 479 (2006). We first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings to the words used. *In re Guardianship of E.L.*, 154 N.H. 292, 300 (2006). However, we will not interpret statutory language in a literal manner when such a reading would lead to an absurd result. *Id.* at 300-01.

Citing *Rye Beach Country Club v. Town of Rye*, 143 N.H. 122 (1998), Cambi urges us to rule that the trial court erred by failing to reconcile RSA 482-A:10, XII with the other paragraphs of RSA 482-A:10 that make a motion for reconsideration filed with the wetlands council a prerequisite to superior court review. We agree.

Construing RSA 482-A:10, XII as allowing the disputed petitioners to reenter this case, after they failed to move for reconsideration of the council's multiple decisions to exclude them, would lead to a result the legislature could not have intended. RSA 482-A:10, XII allows a person with rights that may be directly affected by the appeal to *become* a party to the appeal. But here, under the trial court's construction, the disputed petitioners did not "become" parties to the appeal; they regained a status that was expressly denied them by the council. We do not believe that by using the phrase "[a]ny person" in RSA 482-A:10, XII, the legislature intended to create a bypass around the statutory reconsideration requirement, *see* RSA 482-A:10, VIII, for persons aggrieved by decisions of the council.

How a party enters a case has a significant bearing upon his or her rights and obligations. Here, for example, had the question of the disputed petitioners' right to be parties come to the superior court through the usual channel, *i.e.*, in an appeal from a decision of the council, the question before the court would have been whether the council acted lawfully and reasonably when it determined that the disputed petitioners had failed to demonstrate that their rights may be directly affected by the outcome of the appeal. However, by relying upon RSA 482-A:10, XII, the superior court did not review the reasonableness of the council's fact-based decision; it decided for itself that the disputed petitioners were "person[s] whose rights may be directly affected by the outcome of the appeal." That the trial court reached a different result than the council does not make the council's decision unreasonable, and only an unreasonable decision by the council could have been properly set aside or vacated by the superior court. Thus, by construing RSA 482-A:10, XII in the way it did, the trial court reached an untenable result: it rewarded the disputed petitioners for failing to follow the statutory reconsideration and appeal process by placing them in a better position than they would have been in had they followed the statutory process. The legislature could not have intended such a result.

In the case before us, it is not necessary to determine precisely who the legislature did intend to cover in RSA 482-A:10, XII. Rather, we limit ourselves to holding that the statute was not intended to provide a bypass around the statutory reconsideration and appeal process. Accordingly, the

trial court erred by ruling to the contrary, and its decision to allow the disputed petitioners to join the appeal is reversed.

## IV

Cambi and DES both argue that the trial court erred by ruling that "the Bureau and the Council are required as a matter of law to apply the standards laid out in the wetlands permitting regulations, to the upland areas indicated in the plans for the . . . Cambi propert[y]." We agree.

Under the Comprehensive Shoreland Protection Act, "'[p]rotected shoreland' means, for natural, fresh water bodies without artificial impoundments, for artificially impounded fresh water bodies, and for coastal waters and rivers, all land located within 250 feet of the reference line of public waters." RSA 483-B:4, XV. The CSPA further provides:

> I. All state agencies shall perform their responsibilities in a manner consistent with the intent of this chapter. State and local permits for work within the protected shorelands shall be issued only when consistent with the policies of this chapter.
> II. When the standards and practices established in this chapter conflict with other local or state laws and rules, the more stringent standard shall control.

RSA 483-B:3. "Within the protected shoreland, any person intending to . . . [c]onstruct a water-dependent structure, alter the bank, or construct or replenish a beach shall obtain approval and all necessary permits pursuant to RSA 482-A." RSA 483-B:6, I(b). In addition, "[a] water dependent structure, meaning one which is a dock, wharf, pier, breakwater, or other similar structure, or any part thereof, *built over, on, or in the waters of the state*, shall be constructed only as approved by the department, pursuant to RSA 482-A." RSA 483-B:9, II(c) (emphasis added). Finally, the CSPA defines "'[w]ater dependent structure' [to] mean[] a structure that services and supports activities that require direct access to, or contact with the water, or both, as an operational necessity *and* that requires a permit under RSA 482-A, including but not limited to a dock, wharf, pier, breakwater, beach, boathouse, retaining wall, or launching ramp." RSA 483-B:4, XXVI (emphasis added).

Based upon the foregoing statutory provisions, the trial court determined that "the Bureau's jurisdiction extended to the entire area of [Cambi's] proposed project[], [and] did not end at the bank of the lake" and that "by extending jurisdiction to the upland areas of the project, the Bureau [was] required to apply the strict standards of the wetlands regulations [*i.e.*, New Hampshire Administrative Rules, Env-Wt 302.03] to the upland areas." According to the Caytens: (1) Cambi wants to build a

boathouse; (2) a boathouse is a "water dependent structure"; (3) construction of a water dependent structure requires a permit pursuant to RSA chapter 482-A; (4) the RSA chapter 482-A permit process is more stringent than the requirements of RSA chapter 483-B, and includes regulations requiring "avoidance and minimization," *see* N.H. ADMIN. RULES, Env-Wt 302.03; and (5) because of the CSPA's "consistency" requirement in RSA 483-B:3, I, Cambi's entire project, including the boathouse construction work landward of the bank of the lake, is subject to the DES avoidance and minimization regulations. The Caytens' argument misapprehends the statutory and regulatory scheme.

Under the wetlands statute, a dredge and fill permit is required before one can "excavate, remove, fill, dredge or construct any structures in or on any bank, flat, marsh, or swamp in and adjacent to any waters of the state." RSA 482-A:3, I. Geographically, and in the context of fresh water, the dredge and fill permit requirement applies "to those portions of great ponds or lakes created by the raising of the water level of the same . . . and to all surface waters of the state as defined in RSA 485-A:2 which contain fresh water, including the portion of any bank or shore which borders such surface waters." RSA 482-A:4, II. Moreover, the portion of the wetlands statute pertaining to excavating and dredging in public waters provides that the provisions of that subdivision "shall not apply to . . . [a]ny land above the natural mean high water level of public waters." RSA 482-A:21, II(a).

Here, Cambi received a dredge and fill permit for its proposed lakebed dredging and bank excavation. As initially proposed, Cambi's project also involved a water dependent structure; the boathouse was positioned partially over the water. Under the CSPA, such a boathouse would have required a permit pursuant to RSA chapter 482-A, *see* RSA 483-B:6, I(b). But, at the insistence of the bureau, which was enforcing the regulatory prohibition against boathouses located over the water, *see* N.H. ADMIN. RULES, Env-Wt 402.09(a) (currently Rule 402.08(a)), Cambi reconfigured the project, shifting the location of the boathouse so that it was entirely landward of the bank. Once the boathouse was relocated landward of the bank, it lost its status as a water dependent structure because it was no longer located "over, on, or in the waters of the state," RSA 483-B:9, II(c)—it was now located over a dredged inlet, and no longer required an RSA chapter 482-A dredge and fill permit, *see* RSA 483-B:4, XXVI (defining "water dependent structure" as one "that requires a permit under RSA 482-A"); RSA 482-A:3, I (requiring permits for the construction of structures "in or on any bank, flat, marsh, or swamp in and adjacent to any waters of the state"). Moreover, as there was no statutory basis for applying the Rule 302.03 avoidance and minimization

requirements to a boathouse that was not a water dependent structure, there was never any statutory conflict of the sort necessary to trigger the CSPA consistency provision. In short, we discern no legal basis for imposing the Rule 302.03 requirements on the boathouse in this case.

■ The permitting process in this case unfolded properly under the relevant statutes and regulations. Cambi proposed a project with three wetland impacts: lakebed dredging, bank excavation, and boathouse construction over the water. The bureau foreclosed construction of the boathouse over the water, approved the dredging and excavation under RSA chapter 482-A and Rule 302.03, and approved the boathouse construction under the CSPA and Rule 402.09(b) (currently Rule 402.08(b)) as required by RSA 483-B:3, I. The bureau retained jurisdiction over the entire project, including the portion conducted wholly landward of the bank, but, correctly, it applied the Rule 302.03 requirements only to those portions of the project within protected wetlands. While the trial court correctly ruled that the bureau had jurisdiction over the entire project, it erred in its conclusion that the bureau's jurisdiction over the entire project required application of RSA chapter 482-A and Rule 302.03 to the boathouse. Accordingly, its ruling on that issue is reversed.

In their brief, the Caytens observe that when Cambi's project is completed, the "entire excavated area [landward of the bank] will fill with lake water and become newly exposed lake bottom to Squam Lake." Thus, the Caytens appear to argue that the dredging of an inlet into an area landward of the bank transforms a piece of upland into a protected wetland and makes the boathouse constructed above such inlet a structure constructed over the water, subject to the more stringent requirements of RSA chapter 482-A and Rule 302.03. That argument presents an interesting legal and ecological question, but one that has already been answered by the promulgation of regulations banning boathouses located over state waters and establishing conditions for the approval of boathouses constructed over dredged inlets. *See* N.H. ADMIN. RULES, Env-Wt 402.08. Whether or not there is a sound ecological basis for treating dredged inlets differently than the natural lakebed is for the legislature or the administrative rulemaking process to determine, not this court. *See Greenland Conservation Comm'n*, 154 N.H. at 535.

V

Based upon our disposition of the issues before us, we remand to the trial court for further proceedings consistent with this opinion, and with instructions to strike the disputed petitioners. In so doing, we note that because neither Cambi nor DES appealed the trial court's decision to allow

a further hearing on the merits of the notice claim, the correctness of that ruling is not before us. While we are not certain that any party remaining in the case has standing to raise that issue, that is a question for resolution, in the first instance, in the trial court.

*Reversed and remanded.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.