Board of Tax and Land Appeals
No. 94-128

## APPEAL OF TOWN OF NEWMARKET

### (New Hampshire Board of Tax and Land Appeals)

October 6, 1995

*Boynton, Waldron, Doleac, Woodman & Scott, P.A.*, of Portsmouth (*Francis X. Quinn, Jr.* and *Ralph R. Woodman, Jr.* on the brief, and *Mr. Quinn* orally), for the taxpayers, Real Estate Advisors, Inc., Cheney East Corporation, Moody Point Company, and Cheney Enterprises, Inc.

*Sanders and McDermott*, of Hampton (*Edwinna C. Vanderzanden* on the brief and orally), for the Town of Newmarket.

HORTON, J. The Town of Newmarket (town) appeals a decision of the New Hampshire Board of Tax and Land Appeals (BTLA) granting tax abatements for the years 1990 through 1993 on over 500 residential properties in Newmarket owned by the appellee taxpayers, Real Estate Advisors, Inc., Cheney East Corporation, Moody Point Company, and Cheney Enterprises, Inc. (taxpayers). We affirm.

In January 1991, the taxpayers timely sought abatement of their 1990 tax bills, which were based on the town's assessment values of $12,851,400. The town's assessment values, in turn, were derived

from a 1984 cost-approach valuation. The taxpayers used the capitalization-of-income approach to arrive at a total assessment value of $7,993,040 for the subject properties. The applications for abatement were either denied or not acted upon, and in May 1991, the taxpayers appealed to the BTLA pursuant to RSA 76:16-a (Supp. 1990) (amended 1991). In February 1992, the taxpayers asserted that the "rollover provision," RSA 76:16-a, I (Supp. 1991) (repealed 1992), and its replacement, the "subsequent-years statute," RSA 76:17-c (Supp. 1992) (amended 1993), conferred jurisdiction upon the BTLA to order abatements for the 1991, 1992, and 1993 tax years as well, even though they did not file individual applications with the selectmen for abatement for those tax years. Prior to the November 1993 hearing on valuation, the taxpayers filed a motion *in limine* seeking a determination as to the tax years covered by their original appeal. The BTLA ruled that pursuant to the rollover provision, the taxpayers' appeal of their 1990 tax year invoked the BTLA's jurisdiction over 1991, and that the subsequent-years statute conferred jurisdiction over the 1992 and 1993 tax years.

Also prior to the hearing, the town served the taxpayers with interrogatories and requests for production of documents, seeking, among other information, evidence regarding mortgages granted on the appealed properties from 1989 through 1992. The town argued that this information would produce evidence relevant to a determination of the fair market value of the properties. The taxpayers refused to respond, and the town served a subpoena *duces tecum* upon them requesting that the evidence be produced at the hearing. The taxpayers moved to quash the subpoena, and the BTLA granted their motion on the basis that the subpoena was not timely filed. The town also argued that other properties owned by the taxpayers, which were not part of the appeal, were underassessed in an amount that should offset the alleged overassessments of the appealed properties.

In its January 1994 decision, the BTLA ruled that the taxpayers carried their burden of proving that their assessments were disproportionately high, and found that the assessments should be calculated using the income approach rather than the cost approach. The BTLA adopted the town's adjustments to the taxpayers' income approach valuation and ordered a reduction in the assessment values from $12,851,400 to $10,614,600. The BTLA also found that the town failed to prove that the taxpayers' nonappealed land was underassessed, and declined to award the requested offset. The town appeals the BTLA rulings.

We first address the town's argument that the BTLA erred in ruling that the taxpayers' 1991 tax assessments were automatically

deemed appealed by the rollover provision, and that as a result, the subsequent-years statute applied to give the BTLA jurisdiction over the taxpayers' 1992 and 1993 tax assessments. The town contends that because the taxpayers' original appeal was taken in May 1991, prior to the July 1991 effective date of the rollover provision, the BTLA applied the provision retrospectively. The town argues that retrospective application: (1) violates part I, article 23 of the New Hampshire Constitution when it is read together with part I, article 28-a of the New Hampshire Constitution and RSA 541-A:3, I (Supp. 1994); and (2) also denied the town the opportunity to contemporaneously revise its assessments as mandated under RSA 75:8 (1991). According to the town, the taxpayers were required to follow the pre-rollover provision procedure of filing a separate appeal for each tax year for which an abatement was sought. *See Appeal of Town of Sunapee*, 126 N.H. 214, 216, 489 A.2d 153, 155 (1985).

We are faced with a question of statutory interpretation and accordingly first look to the language of the statutes at issue. *Rix v. Kinderworks Corp.*, 136 N.H. 548, 550, 618 A.2d 833, 834 (1992). The rollover provision provided that

> [p]roperty owners who have appealed a tax assessment to the board of tax and land appeals and who receive a tax bill for a subsequent year prior to the time the board of tax and land appeals has acted on the original appeal shall be automatically considered as having appealed the subsequent bill and no further filing fee shall be required.

RSA 76:16-a, I (Supp. 1991). The provision took effect on July 2, 1991, and was repealed effective April 1, 1992. Laws 1991, 386:4; Laws 1992, 175:2, :5. Its replacement, the subsequent-years statute, reads as follows:

> I. Whenever the board of tax and land appeals, pursuant to RSA 76:16-a, or the superior court, pursuant to RSA 76:17, grants an abatement on the grounds of an incorrect property assessment value, the selectmen or assessors shall thereafter use the correct assessment value, as found by the board or the court, in assessing subsequent taxes upon that property, until such time as they, in good faith, reappraise the property pursuant to RSA 75:8 due to changes in value, or until there is a general reassessment in the municipality.
> II. If, while an appeal pursuant to RSA 76:16-a or 76:17 is pending, subsequent taxes are assessed using an assessment value later found to be incorrect by the board of tax

and land appeals or the superior court, the selectmen or assessors shall abate such subsequent taxes, using the correct assessment value as found by the board or the court, even if no abatement request or appeal has ever been filed with respect to such subsequent taxes.

    III. The board of tax and land appeals and the superior court shall retain continuing jurisdiction over any abatement granted by them pursuant to RSA 76:16-a or 76:17 respectively, for purposes of enforcing the requirements of this section.

RSA 76:17-c (amended 1993) (changing applicability date of paragraph III from tax bills mailed on or after April 1, 1992 to tax bills mailed on or after April 1, 1991).

    As the rollover provision does not specify whether it is the prior appeal or the future tax bill that must be filed or received by the provision's July 2, 1991, effective date, *see* Laws 1991, 386:4, :10, we "look to the intent of the legislation, which is determined by examining the construction of the statute as a whole, and not simply by examining isolated words and phrases found therein." *Rix*, 136 N.H. at 550, 618 A.2d at 834 (quotation omitted). We also consider the "mischief" the statute was intended to remedy. *Id.* The BTLA found that the rollover provision and the subsequent-years statute were enacted to address the delay created by the BTLA's backlog. This delay was three years long at the time of the board's November 1993 order, and required taxpayers to appeal each future assessment mailed during the pendency of their original appeal, thereby incurring additional filing fees.

    To address the "mischief" created by the BTLA backlog, the provision provides relief to taxpayers who receive subsequent tax bills during the pendency of their original appeal. Because the rollover provision applies, effective July 2, 1991, to "[p]roperty owners who *have appealed* a tax assessment . . . and who receive a tax bill for a subsequent year prior to the time the board of tax and land appeals has acted on the original appeal," RSA 76:16-a, I (Supp. 1991) (emphasis added), we conclude that this language contemplates, rather than precludes, application of the provision to taxpayers who filed their original appeal prior to the provision's effective date, and that the triggering event for application of the statute is the receipt of the subsequent year's tax bill while the original appeal is pending. We therefore find that neither the BTLA's application of the rollover provision, nor its resultant application of the subsequent-years statute, was retrospective.

■ Our decision would not change even assuming, *arguendo*, that the BTLA did apply the abatement statutes retrospectively because the prohibition against retrospective application of statutes set forth in part I, article 23 of the New Hampshire Constitution does not protect municipalities. *See, e.g.*, *Town of Nottingham v. Harvey*, 120 N.H. 889, 898, 424 A.2d 1125, 1131 (1980). The town argues that the board's assertion of jurisdiction over subsequent years has denied the town the opportunity to contemporaneously revise its assessments as mandated under RSA 75:8. In addition, the town contends that the prohibition against unfunded mandates, N.H. CONST. pt. I, art. 28-a, and RSA 541-A:3, I, which provides that rules adopted by agencies must not violate that prohibition, should be read to "color" our holding in *Nottingham*. We disagree and reaffirm our holding in *Nottingham*. The town has not been denied the opportunity to revise its assessments. RSA 76:17-c, I, specifically permits the town to "in good faith, reappraise the property pursuant to RSA 75:8 due to changes in value." To the extent the town asserts an independent unfunded mandate argument, *see* N.H. CONST. pt. I, art. 28-a, we conclude that it, too, must fail. Furthermore, we note that these statutes merely alter the procedure by which taxpayers can challenge a town's preexisting duty to proportionally assess taxes, *cf. Dewey v. Stratford*, 40 N.H. 203, 207 (1860) (abatement statutes are remedial and should be liberally construed), and that, therefore, they could be applied retrospectively to the taxpayers, *Eldridge v. Eldridge*, 136 N.H. 611, 613, 620 A.2d 1031, 1032 (1993) ("presumption of prospectivity [of statutes] is reversed . . . when the statute is remedial in nature or affects only procedural rights").

■ The taxpayers' appeal of their 1990 assessment was filed on May 6, 1991, prior to the effective date of the rollover provision, but they received their 1991 tax bill in late October or early November 1991, after the provision's effective date, and before the BTLA had acted on the original appeal. Accordingly, we hold that the BTLA correctly ruled that the rollover provision applied to appeal the taxpayers' 1991 assessment automatically. On the same bases, we affirm the BTLA's ruling that the subsequent-years statute applied to give the board jurisdiction over the taxpayers' 1992 and 1993 assessments.

■ The town next argues that the BTLA erred in quashing the town's subpoena *duces tecum*. As the record indicates that the town did not serve its subpoena *duces tecum* before November 15, at most four days before the November 19 hearing, we hold that the BTLA properly granted the taxpayers' motion. *See* N.H. ADMIN. RULES,

Tax 201.25(d) ("Subpoenas shall be served at least ten days before the hearing date for which the witness is being subpoenaed.").

▮ The town also argues that the BTLA erred in excluding evidence obtained from the town's tax records of recorded mortgages dated from 1978 through 1991 on certain of the subject properties. In its February 1994 order responding to the town's motion for a rehearing, the BTLA ruled that the recorded mortgages were properly excluded:

> The mortgages were irrelevant because under RSA 75:1, the assessment standard is market value not mortgage value. Market value is determined by using the three approaches to value: (1) comparative sales; (2) cost; and/or (3) income. The board, in its [January 1994] decision, concluded the income approach was the best approach in this case. Mortgages are not evidence of market value, but rather are evidence of financing arrangements with numerous variables. To the extent these mortgages were financing arrangements or refinancing arrangements, they would have no relation to market value but would go more to the borrower's financial condition and the economy's general decline. In this case, the Taxpayers' President, Mr. Cheney, stated the mortgages were irrelevant because they were not purchase-money mortgages but rather were mortgages for refinancing. Additionally, some mortgages were blanket mortgages, i.e., they covered several properties rather than a single property.

(Citations omitted.) We find no abuse of discretion in the board's ruling that the recorded mortgages were irrelevant to the income approach to valuation chosen by the board. *See* RSA 541-A:33, II (Supp. 1994) (rules of evidence not applicable to administrative agency proceedings; irrelevant evidence may be excluded); RSA 541:13 (1974) (burden on party seeking to set aside order to show it is clearly unreasonable or unlawful).

▮ The town's final argument is that other properties owned by the taxpayer, which were not the subject of these abatement appeals, were underassessed and offset the abatements ordered on the subject properties. We find that the BTLA's ruling is supported by the record and consistent with *Appeal of Town of Sunapee*, 126 N.H. at 217, 489 A.2d at 155, in which we stated that "[w]hen a taxpayer challenges an assessment on a given parcel of land, the board must consider assessments on any other of the taxpayer's properties." The BTLA determined that the method used by the

town to show that the taxpayers' nonappealed properties were underassessed was untenable, and concluded that "based upon the evidence . . . the Taxpayers' nonappealed land was not underassessed."

First, the BTLA found that the taxpayers' president testified that "he did not think, in his professional opinion, the land could be sold during this particular market time for the per-unit value asserted by the Town." The BTLA next noted that the lack of similar land sales showed "there was no activity of land for the development of multi-unit properties." The board also found that "[b]ecause no one was building new, multi-unit buildings, it was inappropriate to use a developed, per-unit value to arrive at a raw land value when the market information and general condition of the economy did not support that use of the land." We affirm the BTLA's denial of the requested offset.

*Affirmed.*

All concurred.