Rockingham
No. 96-192

RYE BEACH COUNTRY CLUB, INC.

v.

TOWN OF RYE

November 4, 1998

*Casassa and Ryan*, of Hampton (*John J. Ryan* on the brief and orally), for the plaintiff.

*Michael L. Donovan*, of Concord, by brief and orally, for the defendant.

THAYER, J. The Town of Rye (town) appeals the decision of the Superior Court (*Goode*, J.) granting Rye Beach Country Club, Inc.'s, now known as Abenaqui Country Club, Inc. (taxpayer), petition for abatement, and the decision of the Superior Court (*McHugh*, J.) denying its motion for reconsideration. We affirm in part and reverse in part.

The parties stipulated to the following facts. The taxpayer's property consists of an eighteen hole golf course with related buildings and improvements. This litigation focuses solely on that part of the taxpayer's property which is located within the recreational zone of the Rye Beach Village District. The recreational zone specifically prohibits residential use.

In 1989, the town assessed the taxpayer's property in the amount of $3,434,150 based upon the results of the town's 1986 uniform property revaluation. Although the 1989 assessment included both the taxpayer's land and buildings, the taxpayer sought an abate-

ment only on the value of the land. The taxpayer filed inventories with the town for 1989 and 1992-1995. A separate petition for abatement of the taxpayer's 1991 taxes was dismissed by the trial court for failure to file a 1991 inventory. In the action at issue, the board of selectmen denied the abatement, but the trial court reversed and granted the abatement for 1989 and 1991-1995. The Superior Court (*McHugh*, J.) denied the town's motion for reconsideration, which presented evidence that the taxpayer did not file an inventory for 1991.

At trial, Alfred B. Ikeler testified for the town. As a staff appraiser, he assisted in the 1986 revaluation with appraisal supervisor, Richard Young, Sr. The parties stipulated, and the trial court incorporated into its decree, that the town's valuation was based on the following methodology:

> 1. the number of "front" acres of [the taxpayer's] land was determined by taking the total number of front feet on public roads, multiplying by a depth of 200 feet and dividing that figure by 43,560 (the number of square feet per acre);
> . . . .
> 3. market value was determined using comparable sales of residential land in the surrounding neighborhood, commercial sales using the Marshall-Swiff [*sic*] method of golf course evaluation, and a comparison of the Wentworth Fairways Golf Course [located in Rye].

The trial court rejected the comparable sales approach used by the town in favor of the income approach proposed by the taxpayer. Referring also to Young's deposition testimony, the trial court concluded that the town's appraiser erroneously assessed the taxpayer's property as if it were residentially zoned and used rather than commercially zoned and used.

Using the income approach, the trial court concluded that the equalized value of the taxpayer's land as of April 1, 1989, was $891,650, and ordered an abatement. Pursuant to the "subsequent years statute," RSA 76:17-c (Supp. 1997), the trial court also abated the taxpayer's 1991-1995 taxes.

*I. Failure to File an Inventory*

▉ The superior court may grant tax abatements as justice requires. *See* RSA 76:17 (1991) (amended 1991, 1994, 1995). In order to be granted an abatement, however, the taxpayer must prove by a preponderance of the evidence that he is paying more than his

proportional share of taxes. *See City of Manchester v. Town of Auburn*, 125 N.H. 147, 154, 480 A.2d 60, 65 (1984).

This case involves an interplay between RSA 74:7-a, which penalizes a taxpayer for failure to file an inventory, and RSA 76:17-c, commonly referred to as the "subsequent years statute," which obviates the need for taxpayers to file separate petitions for abatement for subsequent years. The town argues that RSA 74:7-a barred the trial court from ordering an abatement pursuant to the subsequent years statute for a year in which the taxpayer did not file an inventory of taxable property. The taxpayer contends that application of the subsequent years statute is not conditioned upon the filing of inventory forms.

"This court, of course, is the final arbiter of the legislature's intent as expressed in the words of [each] statute considered as a whole." *Pope v. Town of Hinsdale*, 137 N.H. 233, 237, 624 A.2d 1360, 1362 (1993). "We interpret legislative intent from the statute as written, and therefore, we will not consider what the legislature might have said or add words that the legislature did not include." *Petition of Walker*, 138 N.H. 471, 474, 641 A.2d 1021, 1024 (1994). Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. *Appeal of Ashland Elec. Dept.*, 141 N.H. 336, 340, 682 A.2d 710, 712 (1996).

We begin by examining the language found in the statutes themselves. *Town of Wolfeboro v. Smith*, 131 N.H. 449, 452, 556 A.2d 755, 756 (1989). RSA 74:7-a provides in pertinent part:

> Any person who fails to file an inventory form and who becomes liable to pay the penalty specified in this section shall lose his right to appeal . . . .

RSA 74:7-a, I (1991) (amended 1991, 1994, 1995). The inventory operates as a monitoring device for the town, putting the town on notice when a taxpayer acquires or disposes of assets. *See Langford v. Town of Newton*, 119 N.H. 470, 472, 403 A.2d 414, 416 (1979); *see also Appeal of Gillin*, 132 N.H. 311, 313, 564 A.2d 459, 460 (1989). Failure to file an inventory results in a penalty under RSA 74:7-a, including a fine and the loss of a taxpayer's right to appeal an assessment. In fact, a properly filed inventory is a jurisdictional prerequisite for the superior court to order an abatement. *See* RSA 76:17; *see also Bartlett v. New Boston*, 77 N.H. 476, 478, 93 A. 796, 797 (1915).

In the instant case, the taxpayer concedes that it failed to file a 1991 inventory in accordance with RSA 74:7. Because the taxpayer did not satisfy the condition precedent of filing an inventory, RSA

74:7-a penalizes the taxpayer by removing its right to appeal the 1991 assessment. *See Bartlett*, 77 N.H. at 478, 93 A. at 797. Because the taxpayer lost its right to appeal, the town cannot be ordered to abate the 1991 assessment.

The taxpayer nevertheless argues that because the subsequent years statute controls once an abatement petition is properly lodged, it would be contrary to the plain meaning of the statute to hold that the failure to file an inventory form in a later year removes that year from the statute's application. The subsequent years statute provides in pertinent part as follows:

> If, while an appeal pursuant to RSA 76:16-a or 76:17 is pending, subsequent taxes are assessed using an assessment value later found to be incorrect by the board of tax and land appeals or the superior court, the selectmen or assessors shall abate such subsequent taxes, using the correct assessment value as found by the board or the court, even if no abatement request or appeal has ever been filed with respect to such subsequent taxes.

RSA 76:17-c, II (Supp. 1997). "When interpreting two statutes which deal with a similar subject matter, we will construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statute." *Petition of Public Serv. Co. of N.H.*, 130 N.H. 265, 282, 539 A.2d 263, 273 (1988) (citation omitted), *appeal dismissed*, 488 U.S. 1035 (1989).

The subsequent years statute does not apply in any year when the taxpayer fails to comply with RSA 74:7-a in that year. The purpose of the subsequent years statute is to provide relief to taxpayers who receive subsequent tax bills during the pendency of their original appeal and to eliminate the need to file separate appeals. *Appeal of Newmarket*, 140 N.H. 279, 283, 665 A.2d 1088, 1091-92 (1995). The subsequent years statute, however, does not eliminate the need for taxpayers to file inventories because even though an appeal is pending, the taxpayer may acquire or dispose of assets. Consequently, we reverse that part of the trial court's decree ordering the town to abate the taxpayer's 1991 assessment.

We note that our holding, which is consistent with the administrative rules of the board of tax and land appeals, *see* N.H. ADMIN. RULES, Tax 203.05(p), is dispositive on this issue. Accordingly, we need not address the town's argument that res judicata barred the trial court's abatement order. *See Dime Savings Bank of New York v. Town of Pembroke*, 142 N.H. 235, 238, 698 A.2d 539, 541 (1997).

## II. Sufficiency of the Evidence

■ We next turn to the trial court's ruling that the town's appraisal method was inappropriate. The valuation of property is a question of fact for the trial court, and we will not overturn its finding unless it is clearly erroneous or unsupported by the evidence. *Society Hill at Merrimack Condo. Assoc. v. Town of Merrimack*, 139 N.H. 253, 255, 651 A.2d 928, 930 (1994).

The town argues that the trial court erroneously concluded that the town valued the golf course as if it were available for residential use. The town contends that the trial court drew this conclusion from Young's deposition wherein he testified that the town assessed the taxpayer's property as if it were residentially zoned and used. The town contends that later in the deposition, Young corrected his earlier testimony by stating that the taxpayer's property was not valued as if it were residential, but was valued using the same methodology as was used on residential land. Conflicts and contradictions in the testimony, however, are for the trier of fact to resolve. *Town of Croydon v. Current Use Advisory Bd.*, 121 N.H. 442, 446, 431 A.2d 126, 129 (1981).

■ In addition to basing its decree upon Young's testimony, the court adopted the taxpayer's expert's appraisals and rejected those offered by the town. The trial court considered the taxpayer's valuation methodology to be reliable because it entailed three valuation approaches with only slight variations among them. Furthermore, the parties stipulated that the town valued the taxpayer's property based in part upon residential sales around the golf course. The trial court reasonably rejected this valuation methodology because the taxpayer's property lies in a zone which prohibits residential use. Accordingly, we conclude that sufficient evidence existed to support the trial court's finding.

■ The town also contends that the trial court should not have relied upon deposition transcripts, but rather on trial testimony in deciding this case. We previously held that in abatement proceedings, the court should consider all evidence before it relating to the valuation of the subject property. *See City of Manchester*, 125 N.H. at 154, 480 A.2d at 65. We reject the town's assertion that a less stringent standard of review applies when a trial court bases its decree in part upon documentary evidence because the trial judge lacked the opportunity to observe the credibility and demeanor of the witness. *Hillside Assocs. of Hollis v. Maine Bonding & Cas. Co.*, 135 N.H. 325, 330-31, 605 A.2d 1026, 1029 (1992). The town's reliance

upon *Hillside* is misplaced because its holding applies only when all the evidence presented to the trial court is documentary. *See id.; cf.* FED. R. CIV. P. 52. In this case, the parties presented both live and documentary evidence. For that reason, we affirm the trial court's decision in this regard. We have reviewed the record with respect to the town's further arguments and find them to be without merit and warranting no further discussion. *See Vogel v. Vogel,* 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed in part; reversed in part.*

All concurred.